John KALE, Plaintiff–Appellant,

v.

Stanley OBUCHOWSKI, Trustee in Bankruptcy for Wayne J. Klein, and Brian Andersen, Defendants–Appellees.

Anthony J. Murray, Jr., and George C. Pontikes, Appellants.

No. 91–3797.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 16, 1992.

Decided Feb. 9, 1993.

George C. Pontikes, Pontikes & Associates, Chicago, IL, Anthony J. Murray (argued), Wilmette, IL, for appellants.

Richard J. Mason, Ross & Hardies, Patrick S. Munzer, Katten, Muchin & Zavis, Chicago, IL, for Stanley Obuchowski, Trustee of the bankruptcy estate of Wayne J. Klein and Wayne Klein, debtor.

Terry F. Moritz, Kenneth S. Ulrich (argued), Michael J. Small, Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Chicago, IL, for Brian Anderson.

Before CUDAHY, EASTERBROOK and MANION, Circuit Judges.

EASTERBROOK, Circuit Judge.

Wayne Klein feared that the trustee in his bankruptcy would uncover shenanigans. Efforts to spirit documents out of the trustee's reach landed Klein in jail. *United States v. Klein*, 910 F.2d 1533 (7th Cir.1990). With Klein salted away, some of his associates emerged to make claims. John Kale contended that he, Klein, and Brian Andersen were partners in an industrial park, known as the Park at Chicago Ridge. Kale asked the bankruptcy court to recognize that interest, free of any claims by Klein's creditors.

Andersen and the trustee opposed Kale's demand, observing among other things that Kale had told a different story to a state court not long before. Deposed during divorce proceedings in Illinois, Kale testified:

Q. Are you presently investing in any form in the Chicago Ridge Industrial Park?

A. No.

Q. Or as it is most commonly known, the Industrial Park at Chicago Ridge?

A. No.

Kale submitted an affidavit denying that he had an interest in any real property other than the marital home. In open court, Kale reiterated the truth of the statement in the affidavit. The judge then dissolved the marriage and approved a property settlement requiring Kale to pay $175,000 to his former wife in lieu of all other financial obligations.

Kale now asserts that he did, and does, own one-sixth of the industrial park. This implies that Kale committed perjury three times: in the deposition, in the affidavit, and in the statement before the judge. Bankruptcy Judge Katz was not amused. He invoked judicial estoppel to dismiss Kale's claim. Having asserted in state court that he did not own an interest in the industrial park, and having prevailed on that assertion, Kale could not take an inconsistent position in other litigation, Judge Katz concluded. The district judge affirmed and penalized Kale and his two lawyers $2,000 under Fed.R.Civ.P. 11. 1991 WL 204925, 1991 U.S.Dist. LEXIS 13929, amended, 1991 WL 237841, 1991 U.S.Dist. LEXIS 16096 (N.D.Ill.). All three have appealed.

Despite *Astor Chauffeured Limousine Co. v. Runnfeldt Investment Corp.*, 910 F.2d 1540, 1550–51 (7th Cir. 1990), appellants have not paid the slightest attention to the question whether state or federal law defines the extent of judicial estoppel in litigation under federal law, where the inconsistent position was taken in state court. Like the parties, we refer to Illinois law and federal law interchangeably—if only because the cases use consistent approaches. Opinions in Illinois and in this court say that a party who prevails in the first case by asserting some proposition may not seek to prevail in a later case by asserting its opposite. *Davis v. Wakelee*, 156 U.S. 680, 689, 15 S.Ct. 555, 558, 39 L.Ed. 578 (1895); *Astor*, 910 F.2d at 1547–48, 1551; *In re Cassidy*, 892 F.2d 637, 641 (7th Cir.1990); *Eagle Foundation, Inc. v. Dole*, 813 F.2d 798, 810 (7th Cir.1987); *Galena Park Home v. Krughoff*, 183 Ill. App.3d 206, 208, 131 Ill.Dec. 810, 811, 538 N.E.2d 1366, 1367 (3d Dist.1989); *Finley v. Kesling*, 105 Ill.App.3d 1, 8–10, 60 Ill.Dec. 874, 880–81, 433 N.E.2d 1112, 1118–19 (1st Dist.1982). Kale accepts this statement of the doctrine and contends that it shows why he wins: because his perjury had its desired effect, the state court did not *decide* any issue adversely to him but instead approved the property settlement. Yet the rule, as we have stated it, speaks of *prevailing* in the first case, not of obtaining a judicial decision. Hoodwinking a state

362

court so completely that decision becomes unnecessary is not a satisfactory reason to authorize a contrary claim in another court. No case appellants have cited to us, and none we could find, makes application of judicial estoppel depend on the existence of a judicial opinion adopting the litigant's position; it is enough that the litigant win. Sometimes a settlement sidesteps the issue in the first case, so that neither side prevails on a particular contested issue. See *Konstantinidis v. Cheng Nan Chen*, 626 F.2d 933, 939 (D.C.Cir.1980). Frequently, however, a settlement represents capitulation. Persons who triumph by inducing their opponents to surrender have "prevailed" as surely as persons who induce the judge to grant summary judgment. *Maher v. Gagne*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980). Having won a favorable allocation of property in the divorce case by insisting that he had no interest in real property other than the marital home, Kale is stuck with that proposition in subsequent litigation. In *Finley* a husband obtained a favorable property division in a divorce by asserting that he did not own certain stock; the court invoked judicial estoppel to prevent the husband from claiming in later litigation that he rather than his children owned the stock he had disclaimed. *Finley* is almost impossible to distinguish.

■ Attorneys George C. Pontikes and Anthony J. Murray, Jr., contend that their conduct of the litigation is not sanctionable. Our review is deferential, *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 399–405, 110 S.Ct. 2447, 2457–2461, 110 L.Ed.2d 359 (1990), and we conclude that the district judge did not abuse his discretion. Pontikes and Murray protest that they should not be penalized for relying on cases such as *Konstantinidis* that distinguish settlement from judicial decision. True enough: relying on a judicial decision is not sanctionable, even if the court disagrees with its holding. *BASF Corp. v. Old World Trading Co.*, 979 F.2d 615 (7th Cir.1992). But courts expect and insist that attorneys ascertain how far a principle extends. *In re Excello Press, Inc.*, 967 F.2d 1109 (7th Cir.1992). *Konstantinidis*, Kale's princi-

pal authority, holds that the District of Columbia, whose law governed, would not recognize the doctrine of judicial estoppel, at least not when the first case ended in a settlement that did not imply success in persuading either the tribunal or the opponent of the position in question. The court remarked that a state agency twice rejected the disputed position, 626 F.2d at 939, rendering implausible an inference that the settlement, with which the judge had nothing to do, reflected "success" in the prior litigation. *Konstantinidis*, like our parallel holding in *Levinson v. United States*, 969 F.2d 260, 265 (7th Cir.1992), has nothing to say about the preclusive effects of deceit that influences both one's adversary and a tribunal that relied on the position in deciding to approve the settlement.

■ Appellee Andersen asks us to award sanctions under Fed.R.App.P. 38 for pursuing a frivolous appeal. An appeal of a sanction under Rule 11 creates the possibility that the beneficiary of sanctions must spend more than the sum awarded in order to defend it, and thus be made worse off by a judicial order designed for his benefit. To guard against this unhappy outcome, "courts of appeals have ample authority to protect the beneficiaries of Rule 11 sanctions by awarding damages and single or double costs under Rule 38—which they may do ... when the appellant had no reasonable prospect of meeting the difficult standard of abuse of discretion." *Cooter & Gell*, 496 U.S. at 408, 110 S.Ct. at 2462. Andersen's request has been fully briefed and is ready for decision under Circuit Rule 38. *Colosi v. Electri-Flex Co.*, 965 F.2d 500, 505 (7th Cir.1992). Appellants indeed had "no reasonable prospect of meeting the difficult standard of abuse of discretion", as a quick tour of their arguments shows. This tour also fortifies the conclusion that the district judge did not abuse his discretion.

Appellants' brief concentrates on the distinction between settlement and decision, which we have discussed. Other highlights from the brief and oral argument:

Pontikes and Murray contend that judicial estoppel is inappropriate when the first tribunal lacked subject-matter jurisdiction. The legal proposition is doubtful, see *Cassidy*, 892 F.2d at 641, and irrelevant to boot. The divorce court had jurisdiction. It was entitled to dissolve the marriage and divide the Kales' property. Ill.Rev.Stat. ch. 40 ¶ 503. Statements about the non-existence of real assets affected the court's exercise of that authority. See *Finley*, 60 Ill.Dec. at 878, 433 N.E.2d at 1116. Murray conceded at oral argument that he had no authority for the proposition that perjury divests a court of jurisdiction.

Appellants insist that Kale's own mendacity deprived him of due process of law. By lying, Kale prevented the state court from holding a hearing. A judgment entered without a hearing is unconstitutional and therefore cannot serve as the foundation for judicial estoppel, the argument concludes. This bit of sophistry could succeed only if we were to overlook the fact that due process requires notice and an *opportunity* for a hearing. One who sabotages that opportunity, as Kale did, cannot complain.

Pontikes and Murray contend that Kale did not exactly lie to the state court about his ownership interest in the industrial park. Because Klein and Andersen deny that Kale has the precise interest he asserts, Kale could deny in state court that he had an interest. To quote the brief: "Because Kale's 'partners' would not recognize his alleged interest in the Park, in reality, he possessed no such additional real estate interest which he could have shared 'in just proportions' with his wife." Pettifoggery reflects poorly on counsel.

Following the example of the child who murdered his parents and then begged the court to take mercy on an orphan, appellants contend that wiping out Kale's interest would be unfair to his former wife. Yet Kale has not offered to share any recovery with the ex-spouse he so cruelly deceived, and she has not intervened (or even sought to reopen the property settlement in state court). Whatever her equities may be, John Kale has none.

Appellants have other arguments, but displaying them would do little more than illustrate why some members of the public believe that "shyster" and "lawyer" are synonyms. This is a frivolous, doomed, and sanctionable appeal. See *Mars Steel Corp. v. Continental Bank, N.A.*, 880 F.2d 928, 938 (7th Cir.1989) (in banc).

Except for one thing. Rule 11 provides: "If a pleading, motion, or other paper is *signed* in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon *the person who signed it*, a represented party, or both, an appropriate sanction" (emphasis added). Murray's handwritten signature appears on the papers in the district court; Pontikes's name is typed there. Two courts have held that only a manuscript signature supports a sanction. *Giebelhaus v. Spindrift Yachts*, 938 F.2d 962, 964–66 (9th Cir.1991); *White v. American Airlines, Inc.*, 915 F.2d 1414 (10th Cir.1990). We need not decide whether to follow these cases, or whether instead a lawyer "signs" a document by allowing his name to be typed on it, because Andersen ignored Pontikes's argument that he had not "signed" the offending papers. Instead Andersen asserted that the lack of a signature is irrelevant—that any lawyer who played a "substantial role" in the preparation of the paper may be sanctioned, even if he did not sign it. Nothing in Rule 11 supports this position. When asked if he had any authority, counsel pointed to *Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989), which says no such thing and offers strong support to Pontikes. This is the same sort of inventiveness that led the district court to penalize Kale, Murray, and Pontikes.

Although Pontikes has succeeded in avoiding the sanctions entered against him under Rule 11, objectively frivolous or misleading appellate arguments nonetheless support a sanction under Rule 38. There is

no reason to differentiate Pontikes from Murray in this court. Most of their joint brief is devoted to the specious arguments we have described, which required Andersen's lawyer to write 27 pages in reply. Both sides made unsupported and insupportable assertions on this appeal, but appellants' sins are much the greater. We direct appellants to pay an additional $2,000 to Andersen as a penalty under Rule 38. (But for Andersen's inappropriate reply to Pontikes's argument, the award would have been higher.)

The judgment of the district court is affirmed. The award of sanctions under Rule 11 against attorney Pontikes is vacated; the award of sanctions against Kale and attorney Murray is affirmed. All three appellants are jointly and severally liable for an additional $2,000 sanction under Rule 38.