Harriet RISSETTO, Plaintiff–Appellant,

v.

PLUMBERS AND STEAMFITTERS LO-
CAL 343, a business entity, form un-
known, Michael Beavers and Does 1–25,
inclusive, Defendants–Appellees.

No. 94–15724.

United States Court of Appeals,
Ninth Circuit.

Submitted March 14, 1996.*

Decided Aug. 29, 1996.

---

* The panel finds this case appropriate for submis-
sion without oral argument pursuant to Ninth

Circuit Rule 34–4 and Fed. R.App. P. 34(a).

Ivan O.B. Morse and Brian S. Momsen, Morse & Associates, Dublin, California, for plaintiff-appellant.

Diane Sidd–Champion, McCarthy, Johnson & Miller, San Francisco, California, for defendants-appellees.

Before: THOMPSON and KLEINFELD, Circuit Judges, and WILSON, District Judge.**

WILSON, District Judge:

Plaintiff-appellant Harriet Rissetto sued her former employer, defendant-appellee Plumbers and Steamfitters Local 343 ("Local 343"), and supervisor, defendant-appellee Michael Beavers ("Beavers") for, inter alia, age discrimination under the California Fair Employment and Housing Act ("the FEHA").

** Honorable Stephen V. Wilson, United States District Judge for the Central District of California, sitting by designation.

The district court granted summary judgment to defendants and plaintiff appealed. We affirm, but on a different ground than relied upon by the district court.

## BACKGROUND

Plaintiff Rissetto was hired in 1986 as an office trainee by defendant Local 343. She was later promoted to the position of secretary-bookkeeper. Defendant Beavers was her second-level supervisor. Her employment was governed by a collective bargaining agreement ("CBA"), which provided that she could only be discharged for just cause.

In 1989, plaintiff slipped and fell in Local 343's kitchen. As a result of this fall, she experienced pain in her back, neck, right shoulder, right arm, and right wrist. Her job duties (including typing) exacerbated these problems, and her pain increased over time. On November 5, 1990, plaintiff filed a claim for workers' compensation disability benefits. Her last day of employment with Local 343 was January 25, 1991. Immediately thereafter, on January 28, 1991, she began receiving total temporary workers' compensation disability benefits, which she received without interruption until March 30, 1993.

On February 9, 1991, plaintiff filed a grievance under the CBA, alleging age discrimination. The grievance was rejected as untimely (February 8, 1991 was the last day for filing of a timely grievance) as well as meritless. On April 23, 1991, plaintiff timely filed a complaint for age discrimination against Local 343 with the California Department of Fair Employment and Housing ("DFEH"). On April 28, 1991, the DFEH issued plaintiff a right-to-sue letter.

Plaintiff subsequently filed this action in state court, pleading five causes of action under state law: (1) age discrimination under the FEHA; (2) wrongful discharge; (3) breach of contract; (4) breach of the implied covenant of good faith and fair dealing; and (5) negligent misrepresentation. Defendants removed on the ground of complete preemp-

tion under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA").

Defendants moved for summary judgment, making a variety of arguments. First, defendants argued that plaintiff's FEHA claim should be dismissed because she could not prove that she had been constructively discharged or that defendants' asserted legitimate, non-discriminatory reason was a pretext for age discrimination. Defendants next contended that the FEHA claim should be dismissed as to defendant Beavers because no individual liability lies under the FEHA and because plaintiff did not name Beavers in her DFEH complaint. Finally, defendants argued for dismissal of the common law claims on the grounds that they were barred by the exclusive remedy of workers' compensation, preempted by § 301 of the LMRA, and preempted by the FEHA.

In an unpublished order filed on March 31, 1994, the district court granted summary judgment on all claims. It did not address defendants' preemption arguments, and it stated that its subject matter jurisdiction was based on diversity. It held that, as a matter of law, plaintiff could not prove that she had been constructively discharged and therefore could not make out the prima facie case of age discrimination required under *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The court also stated that "substantial evidence indicates that plaintiff voluntarily left Local 343 because her painful injuries both interfered with her work performance and were exacerbated by her work duties. Accordingly, even if plaintiff's allegations supported a claim of constructive discharge, defendants had a legitimate, nondiscriminatory and nonpretextual reason for plaintiff's departure." The court dismissed the four common-law claims as dependent on the FEHA claim.[1] Plaintiff timely filed a notice of appeal on April 29, 1994.

## JURISDICTION

Plaintiff's complaint pleaded five state law causes of action. Defendants removed on the grounds that LMRA preemption transformed her state law claims into claims arising under federal law within the meaning of 28 U.S.C. § 1331. The record does not disclose any attempt to remand the action or any consideration by the district court of the propriety of removal.

In its order, the district court stated that subject matter jurisdiction was founded on the basis of diversity of citizenship. Our review of the record indicates that all of the parties appear to be California citizens, so this conclusion is of doubtful validity. We therefore must examine whether the district court in fact had jurisdiction over this action.

■ A federal district court has removal jurisdiction over actions which might have been brought in that court, 28 U.S.C. § 1441(a), including all actions arising under federal law, 28 U.S.C. § 1331. A claim pleaded under state law that requires the interpretation of a collective bargaining agreement is transformed by § 301 of the LMRA into a claim arising under federal law. *See, e.g., Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 413, 108 S.Ct. 1877, 1885, 100 L.Ed.2d 410 (1988); *Milne Employees Ass'n v. Sun Carriers, Inc.,* 960 F.2d 1401, 1408 (9th Cir.1992).

■ Plaintiff's breach of contract claim is preempted by § 301 because the contract alleged to have been breached is itself the CBA. *Chmiel v. Beverly Wilshire Hotel Co.,* 873 F.2d 1283, 1285 (9th Cir.1989); *Young v. Anthony's Fish Grottos, Inc.,* 830 F.2d 993, 997 (9th Cir.1987). Her claim for breach of the covenant of good faith and fair dealing is also clearly preempted because such covenant is an implied term of her CBA. *Milne Employees,* 960 F.2d at 1411; *Cook v. Lindsay Olive Growers,* 911 F.2d 233, 238–39 (9th Cir.1990) ("Where the collective bargaining agreement contains terms governing job security, this breach of the covenant of good

---

**1.** The court held that "[n]ecessarily, plaintiff's common-law causes of action also fail, as these claims ... are dependent on a finding of wrongful conduct by defendants. Once plain-

tiff's allegations of constructive discharge and age discrimination are disregarded, there are no allegations of wrongful conduct."

faith and fair dealing cause of action is preempted"); *Chmiel*, 873 F.2d at 1286.[2]

The district court thus properly exercised subject matter jurisdiction over this action. We have jurisdiction over this appeal from a final judgment under 28 U.S.C. § 1291.

## STANDARD OF REVIEW

We review the grant of summary judgment de novo "and will affirm only if, viewing the evidence in the light most favorable to the party opposing the motion, there are no genuine questions of fact and the trial court correctly applied the substantive law." *Young*, 830 F.2d at 996 (citation omitted).

## DISCUSSION

The district court granted summary judgment on plaintiff's FEHA claim for two reasons. First, it determined that plaintiff had not established a genuine issue as to whether she was constructively discharged. Alternatively, the court held that since the evidence "amply demonstrates that plaintiff's work performance was adversely affected by her injuries," she failed to establish a genuine dispute as to defendants' asserted "legitimate, nondiscriminatory and non-pretextual reason for plaintiff's departure: plaintiff's work performance was adversely affected by her physical injuries." The district court took note of plaintiff's claim for and acceptance of $127,000 in workers' compensation benefits "based on her work-related injuries and inability to work," including total temporary disability payments and permanent disability payments. The court also took note of the testimony of the physicians whom plaintiff had retained in support of her workers' compensation claim that she suffered from serious orthopaedic injuries which interfered with her ability to work.

We do not decide whether plaintiff established a genuine issue of fact as to whether she was constructively discharged or as to whether defendants' asserted reason for her separation was a pretext for age discrimination. Rather, we hold that summary judgment was properly entered because plaintiff was unable to satisfy the element of her prima facie case that required her to show that she "was performing her job in a satisfactory manner," *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1421 (9th Cir.1990), and that there was thus no need even to address the issue of pretext. For the reasons that follow, we hold that plaintiff is estopped from claiming that she was able to perform her job in a satisfactory manner.

### I. *Judicial Estoppel*

In applying for workers' compensation temporary total disability benefits in November 1990, plaintiff necessarily asserted that she was unable to work. *E.g., Robinson v. W.C.A.B.*, 194 Cal.App.3d 784, 239 Cal.Rptr. 841, 845 (5 Dist.1987) ("The period of temporary total disability is that period when the employee is totally incapacitated for work"); *Herrera v. W.C.A.B.*, 71 Cal.2d 254, 78 Cal. Rptr. 497, 499, 455 P.2d 425 (1969) (employee is temporarily totally disabled if he or she is "unable to earn any income").

Plaintiff and Local 343's insurer settled her workers' compensation claim when the insurer agreed to pay total temporary disability benefits. The workers' compensation appeals board approved the settlement, and plaintiff received total temporary disability benefits from January 28, 1991 until March 30, 1993.

■ Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position. See 18 Charles A. Wright, Arthur R. Miller & Ed-

---

**2.** On the other hand, plaintiff's FEHA claim is not preempted by § 301, because the right it grants employees to be free from age discrimination is defined and enforced by California law without regard to the terms of any CBA. *E.g., Chmiel*, 873 F.2d at 1286. Because this action was properly removable in light of the preemption of the breach of contract and breach of the implied covenant claims, we need not decide whether plaintiff's wrongful discharge claim, *see Cook*, 911 F.2d at 237–38, and her negligent misrepresentation claim, *compare Milne Employees*, 960 F.2d at 1408–10 (not preempted) *with Young*, 830 F.2d at 1001 (preempted), are preempted. Even if these claims do not arise under federal law, the district court possessed supplemental jurisdiction over them under 28 U.S.C. § 1367(a). *Young*, 830 F.2d at 999.

ward H. Cooper, *Fed. Practice and Proc.* § 4477 (1981 & Supp.1995); *Yanez v. United States,* 989 F.2d 323, 326 (9th Cir.1993); *Russell v. Rolfs,* 893 F.2d 1033, 1037 (9th Cir.1990), *cert. denied,* 501 U.S. 1260, 111 S.Ct. 2915, 115 L.Ed.2d 1078 (1991). In *Russell,* we explained that:

> The policies underlying preclusion of inconsistent positions are general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings.... Judicial estoppel is intended to protect against a litigant playing fast and loose with the courts.... Because it is intended to protect the dignity of the judicial process, it is an equitable doctrine invoked by a court at its discretion.

893 F.2d at 1037. In *Yanez,* we observed that the doctrine of judicial estoppel remains unsettled.

> The majority of circuits recognizing the doctrine hold that it is inapplicable unless the inconsistent statement was actually adopted by the court in the earlier litigation.... The minority view, in contrast, holds that the doctrine applies even if the Litigant was unsuccessful in asserting the inconsistent position, if by his change of position he is playing "fast and loose" with the court.... In either case, the purpose of the doctrine is to protect the integrity of the judicial process.

989 F.2d at 326 (citations and quotations omitted).

This Circuit has not yet had occasion to decide whether to follow the "majority" view or the "minority" view.[3] In many of our cases, the apparently inconsistent position was not really incompatible with the party's earlier position, *Yanez,* 989 F.2d at 327; *General Signal Corp. v. MCI Telecommunica-*

tions Corp., 66 F.3d 1500, 1505 (9th Cir. 1995), or the party's change in position was justified, *Morris v. State of Cal.,* 966 F.2d 448, 453–54 (9th Cir.1991) (change justified by ineffective assistance of counsel in earlier litigation); *In re Corey,* 892 F.2d 829, 836 (9th Cir.1989) (change justified by third party's fraud); *Stevens Technical Services, Inc. v. SS Brooklyn,* 885 F.2d 584, 589 (9th Cir. 1989) (good faith change in position after loss in earlier litigation). As will be seen, this case does not require us to decide what version of the doctrine to apply, so we leave that question for another day.

Judicial estoppel has been an important subtext to this case. In finding no genuine issue of fact as to pretext, the district judge relied in part on the fact that "[m]oreover, plaintiff received substantial benefits from her workers' compensation carrier, based on her work-related injuries and her inability to work." Indeed, plaintiff suggests that the district court's "real reason" for mentioning this "was to create the implication that Plaintiff had no business filing" this suit. In addition, one of defendants' arguments is that plaintiff is barred from recovering damages on her FEHA claim because she was unable to work from the time she left Local 343 forward. However, defendants do not characterize this argument as an "estoppel" argument. Because of our concern that it might constitute "playing fast and loose with the courts" for plaintiff to claim in 1990 that she was unable to perform her job in order to obtain workers' compensation benefits and to claim now that she was performing her job adequately in order to win damages in this suit, we consider the issue of judicial estoppel. *See Yanez,* 989 F.2d at 326 (judicial estoppel is equitable doctrine invoked by

---

**3.** In *AFN, Inc. v. Schlott, Inc.,* 798 F.Supp. 219, 224–25 n. 7 (D.N.J.1992), the court questioned the Ninth Circuit's use of the terms "majority" and "minority", since only a few cases hold categorically that prior judicial adoption is required for application of judicial estoppel. In the AFN court's view, this terminology is misleading; most of the cases can be read as saying that judicial estoppel is *particularly* appropriate when the party succeeded in the prior proceeding, but they do not really say that the doctrine

cannot be applied absent such prior success. *See Allen v. Zurich Ins. Co.,* 667 F.2d 1162, 1167 (4th Cir.1982) ("Though perhaps not necessarily confined to situations where the party asserting the earlier contrary position there prevailed, it is obviously more appropriate in that situation."). In addition, the Third Circuit recently added itself to the "minority" side of the ledger, holding emphatically that success in the prior proceeding is not required. *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.,* 81 F.3d 355, 361 (3d Cir.1996).

court at its discretion). *Accord Morris,* 966 F.2d at 453; *Russell,* 893 F.2d at 1037.

### a. *What Law of Judicial Estoppel Applies?*

■ Preliminarily, in light of the fact that state law supplies the rule of decision on plaintiff's FEHA claim, we must determine what law applies to the question whether plaintiff is judicially estopped from proceeding with that claim.

The district court had federal question jurisdiction over plaintiff's § 301–preempted breach of contract and breach of the implied covenant claims. Plaintiff's FEHA claim was a supplemental state claim on which California law supplies the rule of decision. None of this Court's cases says anything about the question of what estoppel law governs in such a situation. However, cases from other circuits have acknowledged this problem. The clearest statement is by Judge Easterbrook in *Astor Chauffeured Limousine Co. v. Runnfeldt Investment Corp.,* 910 F.2d 1540 (7th Cir.1990):

> But what of the state claim? The Rules of Decision Act, 28 U.S.C. § 1652, requires federal courts to apply "[t]he laws of the several states ... as rules of decision in civil actions" to the extent no federal statute or rule governs. Does this require us to apply Illinois rules of judicial estoppel to the common law claim, on the ground that it is substantive, or do we treat judicial estoppel as wholly a matter of procedure, to be governed by the law of the court in which the case is pending? Several circuits have assumed that *Erie* requires application of the state rule. *E.g., Konstantinidis v. Chen,* 626 F.2d 933, 937–38 (D.C.Cir.1980). Others apply the federal rule, relying on the 'balancing test' of *Byrd v. Blue Ridge Rural Electric Cooperative,* 356 U.S. 525, 536–38, 78 S.Ct. 893, 900–01, 2 L.Ed.2d 953 (1958). *E.g., Allen [v. Zurich Ins. Co.],* 667 F.2d [1162], 1167 n. 4 [(4th Cir.1982)]; *Edwards [v. Aetna Life Ins. Co.],* 690 F.2d [595], 598 n. 4 [(6th Cir.1982)].... [T]he choice between state and federal law [is] hard for a doctrine such as judicial estoppel, a hybrid between substance and

process that on occasion affects the outcome. Mercifully, the parties have spared us the choice, by ignoring the potential effects of *Erie.* Both sides have treated judicial estoppel as a doctrine to be shaped by the court in which the case is pending. On that assumption we apply to Astor's claim under state law the same rule used for its [federal] securities claims....

*Id.* at 1550–51.

Unfortunately, there is less judicial development of this question than the Seventh Circuit perhaps implied by preceding *Allen* and *Konstantinidis* with "e.g.". In fact, our research has turned up only a handful of cases that even mention this issue. In *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.,* 81 F.3d 355, 358 (3d Cir.1996), the court noted that the parties agreed that federal law on judicial estoppel governed, and (like the Seventh Circuit in *Astor)* the court accepted their agreement. Judge Sarokin, concurring with his own opinion for the panel, said that he thought the court could not merely accept the parties' agreement, but had to decide what law governed. He concluded that *Erie* did not mandate the application of state law, since a court has an extremely strong interest in being able to employ judicial estoppel in order to protect its integrity: "A federal court's ability to protect itself from manipulation by litigants should not vary according to the law of the state in which the underlying dispute arose." *Id.* at 358 n. 2 (Sarokin, J., concurring). He therefore concluded that federal law on judicial estoppel should govern in federal court. *Id.*

In *Czajkowski v. City of Chicago,* 810 F.Supp. 1428, 1435 (N.D.Ill.1993), the court contrasted *Astor* with *Diginet, Inc. v. Western Union ATS, Inc.,* 958 F.2d 1388, 1397 (7th Cir.1992), in which the court applied state law on judicial estoppel. Left thus somewhat adrift, the district court in *Czajkowski* decided to apply federal law to the plaintiff's supplemental state law claims, while noting that federal and Illinois law might be the same in this regard. 810 F.Supp. at 1435 n. 7. In contrast, the court in *Muellner v. Mars, Inc.,* 714 F.Supp. 351,

356 (N.D.Ill.1989) discussed this problem and decided to apply Illinois law.

In *Kale v. Obuchowski,* 985 F.2d 360, 361 (7th Cir.1993), the court stated: "Despite *[Astor],* appellants have not paid the slightest attention to the question whether state or federal law defines the extent of judicial estoppel in litigation under federal law, where the inconsistent position was taken in state court." This is a somewhat different question than whether state law governs on the issue of judicial estoppel on a state law claim in federal court (and thus a different question than *Astor* addressed). As in *Astor,* the court did not decide the question. "Like the parties, we refer to Illinois law and federal law interchangeably-if only because the cases use consistent approaches." *Id.* We do not believe that whether the prior position was taken in state or federal proceedings should be determinative. The integrity problem concerns the court presently confronted with the inconsistent statement; when the prior statement was made, it wasn't inconsistent yet, so the first court is powerless to address the fast and loose behavior.

In *Monterey Development Corp. v. Lawyer's Title Ins. Corp.,* 4 F.3d 605, 608–09 (8th Cir.1993), the court stated that "[b]ecause this is a diversity case, we must apply the substantive law of Missouri," and proceeded to apply Missouri judicial estoppel law. The court did not explain or cite any cases in support of its implicit conclusion that judicial estoppel was substantive under *Erie.* Similarly, in *Reno v. Beckett,* 555 F.2d 757, 770 (10th Cir.1977), a diversity case, the court analyzed Kansas law in holding judicial estoppel inapplicable. The court did not say why Kansas law controlled that question. And in *Walker v. American Motorists Ins. Co.,* 529 F.2d 1163, 1164–65 (5th Cir.1976), a per curiam adoption of the district court's order, the court referred to Alabama law in holding judicial estoppel inapplicable, again without explaining why Alabama law controlled. *See also In re Osborn,* 24 F.3d 1199, 1207 & n. 11 (10th Cir.1994) (applying Texas judicial estoppel law).

The Fourth Circuit reaffirmed its holding in *Allen* that federal law governed in the recent case of *Guinness PLC v. Ward,* 955 F.2d 875, 899 n. 20 (4th Cir.1992). In an opinion cited by Judge Sarokin in his *Ryan Operations* concurrence, a district court held that even if diversity were the sole ground of jurisdiction, "the issue of judicial estoppel would be one properly resolved by the application of federal law rather than state law." *AFN,* 798 F.Supp. at 224 n. 6. The district court in *AFN* concluded that "affirmative countervailing considerations" of the sort recognized by *Byrd,* 356 U.S. at 537, 78 S.Ct. at 901, counseled in favor of applying federal law, since it is the federal court's integrity that is presently at stake. *Id.* Cf. *Wang Laboratories, Inc. v. Applied Computer Sciences, Inc.,* 741 F.Supp. 992, 997 (D.Mass. 1990) (even if jurisdiction was based on diversity, federal estoppel law would govern because "question of which law to apply 'primarily concerns federal interests' "), *rev'd on other grounds,* 958 F.2d 355 (Fed.Cir.1992) (*quoting Edwards,* 690 F.2d at 598 n. 4).

It should also be noted that, as pointed out in *AFN,* in *Scarano v. Central Railroad Co.,* 203 F.2d 510 (3d Cir.1953), the seminal case adopting the judicial estoppel doctrine, the court "applied federal law to resolve the judicial estoppel question, albeit without explicitly stating its reasons for doing so." *AFN,* 798 F.Supp. at 224 n. 6.

Only one case from this Court that discusses judicial estoppel involved a state law claim, either supplemental or in diversity. In *Milgard Tempering, Inc. v. Selas Corp. of Am.,* 902 F.2d 703 (9th Cir.1990), a diversity case, we applied federal law in determining that judicial estoppel was inappropriate. However, we did not explain why federal law controlled.

We now hold what *Milgard* assumed: federal law governs the application of judicial estoppel in federal court. Judicial estoppel enables a court to protect itself from manipulation. The interested party is thus the court in which a litigant takes a position incompatible with one the litigant has previously taken. The tribunal in which the litigant made the first statement could also be interested (there is no reason to think as a general proposition that one statement is more likely than the other to be true), but it is not in a position to do anything about its

interest. Therefore, for all practical purposes, the interests of the second court are uniquely implicated and threatened by the taking of an incompatible position. In our view, this quite strong "affirmative countervailing consideration" of federal policy weighing in favor of the application of federal law in this case requires the policies of *Erie* to yield. *Byrd*, 356 U.S. at 537, 78 S.Ct. at 901.

### b. Are Workers' Compensation Proceedings Equivalent to Judicial Proceedings?

█ Unsurprisingly given its name, judicial estoppel is often articulated as applying to "judicial" proceedings. However, many cases have applied the doctrine where the prior statement was made in an administrative proceeding, and we are not aware of any case refusing to apply the doctrine because the prior proceeding was administrative rather than judicial. *See Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1427 (7th Cir. 1993) ("Though called *judicial* estoppel, the doctrine has been applied, rightly in our view, to proceedings in which a party to an administrative proceeding obtains a favorable order that he seeks to repudiate in a subsequent judicial proceeding.") (collecting cases); *Smith v. Montgomery Ward & Co.*, 388 F.2d 291, 292 (6th Cir.1968) (position taken in workers' compensation proceeding estopped party in subsequent personal injury action); *Simo v. Home Health & Hospice Care*, 906 F.Supp. 714, 718 (D.N.H.1995) (Social Security Administration disability proceeding); *UNUM Corp. v. United States*, 886 F.Supp. 150, 158 (D.Me.1995) (Maine Bureau of Insurance approval proceeding); *Zapata Gulf Marine Corp. v. Puerto Rico Maritime Shipping Auth.*, 731 F.Supp. 747, 750 (E.D.La. 1990) (Interstate Commerce Commission proceeding); *Muellner v. Mars, Inc.*, 714 F.Supp. 351, 357–58 (N.D.Ill.1989) (SSA proceeding) (applying Illinois law). This rule

has been justified on the ground that "[t]he truth is no less important to an administrative body acting in a quasi-judicial capacity than it is to a court of law." *Muellner*, 714 F.Supp. at 357 (*quoting Dept. of Transp. v. Coe*, 112 Ill.App.3d 506, 510, 68 Ill.Dec. 58, 445 N.E.2d 506 (4th Dist.1983)).[4]

We hold that the doctrine of judicial estoppel is not rendered inapplicable in this case by the fact that plaintiff's prior position was taken in a workers' compensation proceeding rather than in a court.

### c. Does a Favorable Settlement Constitute Success?

Under what is sometimes termed the "majority" view of the doctrine of judicial estoppel, the prior inconsistent statement must have been "actually adopted by the court in the earlier litigation." *Yanez*, 989 F.2d at 326. Here, plaintiff did not obtain an actual judgment based on her prior statement. No court ruled upon the truth of plaintiff's claim. Rather, plaintiff settled her workers' compensation claim with defendants insurer, and the settlement was then approved by the workers' compensation appeals board. Plaintiff then received total temporary disability benefits for over two years. It therefore cannot be said literally that her prior statement was "actually adopted" by any court or administrative tribunal. *But see* 2 B.E. Witkin, *Summary of California Law*, Workers' Compensation § 357 (9th ed.1987) (an approved workers' compensation settlement has the force of a litigated judgment).

█ It can, however, be said that plaintiff succeeded or prevailed on her workers' compensation claim. We are thus confronted with the question whether obtaining a favorable settlement is equivalent to winning a judgment for purposes of applying judicial

---

**4.** Many courts have estopped litigants who had claimed to be totally disabled in applying for disability benefits from claiming to be "qualified" under the Americans with Disabilities Act. *See Pegues v. Emerson Electric Co.*, 913 F.Supp. 976, 981 (N.D.Miss.1996); *Smith v. Midland Brake, Inc.*, 911 F.Supp. 1351, 1358 (D.Kan.

1995); *Lewis v. Zilog, Inc.*, 908 F.Supp. 931, 945 (N.D.Ga.1995); *Cheatwood v. Roanoke Industries*, 891 F.Supp. 1528, 1538 (N.D.Ala.1995); *McNemar v. The Disney Stores, Inc.*, 1995 WL 390051, *4 (E.D.Pa.1995); *Berry v. Norfolk Southern Corp.*, 1995 WL 465819, *2 (W.D.Va.1995); *Gar-*

estoppel.[5] We answer in the affirmative. In our view, the fact that plaintiff prevailed by obtaining a favorable settlement rather than a judgment should have no more relevance than in the context of civil rights attorney's fees awards, *i.e.*, none whatever. *See Maher v. Gagne*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980) (party who obtains consent decree is "prevailing party" no less than one who obtains a judgment on the merits).

That analogy was invoked by the Seventh Circuit in *Kale v. Obuchowski*, 985 F.2d 360 (7th Cir.1993), to estop a party who in prior divorce proceedings had disclaimed any interest in certain property from claiming an interest in that property during his alleged partner's bankruptcy proceedings. That party had not won a judgment in the divorce case, but the prior statement had inured to his benefit in the forum of a favorable settlement; the property settlement was made and approved by the court on the basis that he did not have an interest in the property in question. *Id.* at 361. The court rejected the argument that a judicial decision was required, stating that "[p]ersons who triumph by inducing their opponents to surrender have 'prevailed' as surely as persons who induce the judge to grant summary judgment." *Id.* at 362 (*citing Maher v. Gagne, supra*).

We hold that a favorable settlement constitutes the success required under the so-called majority view.[6] It is thus unnecessary to decide whether to adopt the "majority" or "minority" version of the judicial estoppel doctrine.

d. *Do the Inconsistent Positions Have to Be Taken in the Same Litigation?*

■ Judicial estoppel is sometimes said to apply to "preclude[ ] parties from taking inconsistent positions *in the same litigation,*" *Milgard*, 902 F.2d at 716 (emphasis added),

but our cases as well as those from other circuits have applied the doctrine in disregard of this supposed limitation. *See, e.g., Russell*, 893 F.2d at 1037; *Astor*, 910 F.2d at 1548 (stating that estoppel is even more appropriate where the incompatible statements have been made in two different cases, since "[i]nconsistent positions in different suits are much harder to justify" than inconsistent pleading within one suit); *Kale*, 985 F.2d at 362; *Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 212 (1st Cir.1987); *Allen*, 667 F.2d at 1167. We now make it explicit that the doctrine of judicial estoppel is not confined to inconsistent positions taken in the same litigation.

## CONCLUSION

■ In her compromise and release, plaintiff claims that she sustained injury which she describes as "psyche, neck, cervical spine, both upper extremities, and as described in the medicals." The parties agreed to settle for $64,000 plus sums already paid, amounting to a total of approximately $127,-000, although the insurer disputed permanent disability and liability for future medical treatment. The affidavit of the State Compensation Insurance Fund establishes that plaintiff applied for and received benefits for temporary total disability. "A 'disability' under the Workmen's Compensation Law connotes an inability to work.... [An employee] is considered temporarily *totally* disabled if he is unable to earn any income during the period when he is recovering from the effects of the injury." *Herrera*, 78 Cal.Rptr. at 499, 455 P.2d 425 (emphasis in original). That means that plaintiff claimed and obtained money on the basis of an assertion that she had an "inability to work," indeed a "total" inability to earn income. Yet she claims in this lawsuit that she was performing her job adequately and that defendants' cutting her

---

*cia–Paz v. Swift Textiles, Inc.*, 873 F.Supp. 547, 555 (D.Kan.1995).

**5.** The *Yanez* court expressly noted this question, but did not resolve it: "Because Yanez' behavior was not 'fast and loose' we need not reach the issue of whether a good faith settlement constitutes 'prior success' required under the 'majority position.'" *Id.* at 327.

**6.** We acknowledge the contrary rule applied by the Sixth Circuit. *See, e.g., Edwards*, 690 F.2d at 599 ("If the initial proceeding results in settlement, the position cannot be viewed as having been successfully asserted").

down to one or two days per week was a mere pretext for age discrimination, rather than an appropriate response to her physical inability to perform her job.

Plaintiff cannot be permitted to recover money twice on these inconsistent positions. We hold that, having obtained a favorable settlement based on her assertion that she could not work, plaintiff was estopped from claiming that she was performing her job adequately. Plaintiff was thus unable to establish a prima facie case of discrimination. Because all of plaintiff's claims are premised on her ability to work, we affirm the district court's grant of summary judgment to defendants on all of plaintiff's causes of action.

AFFIRMED.