Lenn **GAGNE**, Plaintiff,

v.

**ZODIAC MARITIME AGENCIES, LTD.; M/V Santa Cruz, Defendants.**

No. 02–CV–1302 W(CGA).

United States District Court, S.D. California.

July 24, 2003.

David W. Tiffany, Law Offices of David W. Tiffany, San Diego, CA, for Plaintiff.

William H. Collier, Jr., Keesal, Young and Logan, Long Beach, CA, for Zodiak Maritime Agencies, Ltd.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WHELAN, District Judge.

On July 2, 2002 Plaintiff Lenn Gagne ("Plaintiff") commenced this admiralty suit against Defendant Zodiac Maritime ("Defendant") *et al.* On August 6, 2002 Plaintiff settled a separate action for $50,000

against a separate maritime defendant. *See Gagne v. Northland Ins.,* 00–CV–2274 JM (JFS) (case terminated Aug. 6, 2002). Defendant here now seeks summary judgment under Rule 56 of the Federal Rules of Civil Procedure. All parties are represented by counsel. The Court decides the matter on the papers submitted without oral argument. *See* Civ. L.R. 7.1(d.1).

## I. BACKGROUND

On April 20, 2000 Plaintiff and his four-person crew left the National City Boatyard aboard Plaintiff's 70 foot three-masted sailing vessel, the *Ingomar.* Plaintiff's destination was San Francisco's Pier 40. Approximately 18 hours into the voyage, the *Ingomar*'s fuel filter clogged. The vessel lost power and became dead in the water.

At 7:50 a.m. a large container ship approached the *Ingomar.* Captain Michael Kelley, the *Ingomar*'s skipper, tried to contact the approaching vessel. The container ship altered course and bypassed the *Ingomar* within 100 yards. The container ship's considerable wake, combined with the already choppy seas, created a washing machine effect. The *Ingomar* pitched violently; Plaintiff was thrown to the deck; the *Ingomar* masts snapped in half. *Ingomar* Captain Kelley contacted the Coast Guard, which in turn contacted the *APL Korea,* a container ship in the area, to stand-by. The Coast Guard met up with the *Ingomar* and determined a non-emergency situation. Vessel Assist jumped *Ingomar*'s battery, allowing it to motor to port. Vessel Assist also towed the *Ingomar*'s fallen masts.

On December 18, 2000 Plaintiff sued American Ship Management, *APL Korea*'s operator, for negligently passing *Ingomar* and injuring Plaintiff's person and vessel. *See Gagne v. Northland Ins.,* 00–CV–2274 JM (JFS). On June 20, 2002 United States Magistrate Judge James F. Stiven conducted that case's third settlement conference. Plaintiff settled with American Ship Management and the *APL Korea* for $50,000. On August 6, 2002 Judge Jeffrey T. Miller dismissed the case with prejudice and closed the case file. This separate action against Defendant *Santa Cruz* commenced in July 2002 and Defendant now seeks summary judgment thereon.

## II. LEGAL STANDARD

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Freeman v. Arpaio,* 125 F.3d 732, 735 (9th Cir.1997). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The moving party can satisfy this burden in two ways: by presenting evidence that negates an essential element of the nonmoving party's case, or by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322–23, 106 S.Ct. 2548. "Disputes over irrelevant or unnecessary facts will not preclude a grant of

summary judgment." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987). "The district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified School Dist.,* 237 F.3d 1026, 1030 (9th Cir.2001). Therefore, the court is not obligated "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan,* 91 F.3d 1275, 1279 (9th Cir.1996) (*citing Richards v. Combined Ins. Co.,* 55 F.3d 247, 251 (7th Cir.1995)). If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159–60, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

If the moving party meets this initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Triton Energy Corp. v. Square D Co.,* 68 F.3d 1216, 1221 (9th Cir.1995) (*citing Anderson,* 477 U.S. at 252, 106 S.Ct. 2505) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient."). Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (*quoting* Fed.R.Civ.P. 56(e)).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

"Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

## III. Discussion

Defendant *Santa Cruz* argues that judicial estoppel bars Plaintiff's suit. Defendant *Santa Cruz* also argues that the record as presented does not reveal any genuine issues of material fact remaining for trial. This Court agrees. Defendant is entitled to judgment as a matter of law.

### A. Judicial Estoppel

Defendant *Santa Cruz* first argues that judicial estoppel bars the present action. In the previous action before Judge Miller, Plaintiff expressly claimed that the *APL Korea* was the ship whose wake swamped the *Ingomar,* not Defendant *Santa Cruz.* Additionally, Plaintiff admits to having recovered $50,000 for the *APL Korea's* misconduct when settling that case. In seeking summary judgment here, Defendant *Santa Cruz* argues that Plaintiff is judicially estopped from claiming that the *Santa Cruz* is responsible for a maritime injury that Plaintiff has already recovered from the *APL Korea.*

Plaintiff counters that judicial estoppel does not apply and that there is no inconsistent legal position. Plaintiff creatively characterizes the *APL Korea* settlement as resolving Plaintiff's claim for the "secondary injury" caused when the *APL Korea* allegedly failed to assist the already disabled *Ingomar.* In bringing this second lawsuit, Plaintiff now purports to seek recovery for *Ingomar's* primary swamping injuries.

The Court agrees with Defendant *Santa Cruz;* Plaintiff cannot have it both ways. "Judicial estoppel, sometimes known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Rissetto v. Plumbers & Steamfitters Local 343,* 94 F.3d 597, 600 (9th Cir.1996). *See In re Real Estate Assocs. Ltd. P'ship Lit.,* 223 F.Supp.2d, 1153, 1155 (C.D.Cal.2002). Judicial estoppel is used "because of 'general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.'" *Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 782 (9th Cir.2001), *quoting Russell v. Rolfs,* 893 F.2d 1033, 1037 (9th Cir.1990).

██ The Supreme Court has established certain factors that district courts may take into consideration when deciding whether judicial estoppel is appropriate in a given case: (1) a party's later position is "clearly inconsistent" with its earlier position; (2) the first tribunal accepted and relied upon the prior inconsistent position; and (3) the party maintaining the inconsistent position stands to gain an unfair advantage over the opposing party. *New Hampshire v. Maine,* 532 U.S. 742, 750–51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). These factors, however, are not exhaustive. *Id.* at 751, 121 S.Ct. 1808.

██ The Ninth Circuit has provided additional guidance. First, the inconsistent positions need not come from the same litigation. *Hamilton,* 270 F.3d at 783; *Rissetto,* 94 F.3d at 605. Second, favorable settlement constitutes judicial reliance. *Rissetto,* 94 F.3d at 605. Third, a party can be estopped even if the previous tribunal did not rely upon the first position, if the party is now playing "fast and loose" with the court. *Gen. Signal Corp. v. MCI Telecom. Corp.,* 66 F.3d 1500, 1505 (9th Cir.1995). But the "fast and loose" branch of judicial estoppel requires more than a "threshold inconsistency." *Id.* A possible, indirect or implied inconsistency is therefore insufficient. *Id.* Fourth, the doctrine's purpose is to protect the courts' integrity, not necessarily the parties' interests. *See Russell,* 893 F.2d at 1037. Fifth, the doctrine is equitable and its application discretionary. *Rissetto,* 94 F.3d at 601.

██ Defenses to judicial estoppel are available. Estoppel is defeated if the party can show that the inconsistent position is due to the uncovering of new facts. *U.S. ex rel. Sequoia Orange Co. v. Baird–Neece Packing Corp.,* 151 F.3d 1139, 1147 (9th Cir.1998). Moreover, estoppel is defeated if the party can show that the inconsistent position is due to fraud, inadvertence or mistake. *See, e.g., Morris v. California,* 966 F.2d 448, 453 (9th Cir. 1991) (judicial estoppel cannot bar a claim of innocence in a criminal proceeding where the first admission of guilt was allegedly based upon counsel's constitutionally ineffective advice); *In re Corey,* 892 F.2d 829, 836 (9th Cir.1989) (judicial estoppel inappropriate where the prior inconsistent statement caused by reliance upon a false friend); *Stevens Tech. Servs., Inc. v. SS Brooklyn,* 885 F.2d 584, 589 (9th Cir. 1989) (judicial estoppel not applied where prior inconsistent statement based on a party's good-faith but wrong position as to its rights).

██ After close review of the parties' submissions, the Court finds that Plaintiff is judicially estopped from asserting that the *Santa Cruz* swamped the *Ingomar.* A detailed factor analysis strongly supports the Court's decision.

(1) Plaintiff's current position is clearly inconsistent with his previous position. Plaintiff's Complaint in the action against

the *APL Korea* sought damages for the primary not secondary injury. (*See Def.'s Request for Judicial Notice* Ex. A, ¶ 51) ("the *M/V APL Korea* caused the *M/V Ingomar* to be struck by a large and forceful wake"). In this action Plaintiff seeks recovery for the *same* primary injury. (*See Pl.'s First Am. Compl.* ¶ 16) ("the *M/V Santa Cruz* caused the *M/V Ingomar* to be struck by a large and forceful wake"). Plaintiff's position that the *APL Korea* was the swamping vessel is clearly inconsistent with Plaintiff's present position that the *Santa Cruz* should now be considered the swamping vessel.

(2) Perhaps even more significant, Magistrate Judge Stiven relied upon Plaintiff's prior inconsistent position while overseeing *APL Korea's* agreement to pay $50,000 to settle the first case. The favorable monetary settlement, standing alone, constitutes judicial reliance. *Rissetto,* 94 F.3d at 605. Plaintiff's reliance on Magistrate Judge Stiven's letter is unavailing. As an initial matter, the Court questions the letter's admissibility in light of Federal Rule of Evidence 408 which typically bars settlement evidence from consideration. Even assuming the letter was admissible, it does not alter the Court's conclusion here.

The letter merely indicates that there was an evidentiary conflict that merited, in Magistrate Judge Stiven's opinion, a $100,000 settlement figure. The letter's probative value is neutral; it can be used either to support or deny reliance. But reliance is a fair and reasonable inference where the complaint asserts a certain position, and where no credible evidence is presented that the settlement completely disregarded the complaint's position. The undisputed facts remain: Plaintiff secured a favorable settlement from Defendant *APL Korea* which placed the blame at its stern, and no other. Plaintiff has already recovered $50,000 from the *APL Korea* for conduct now Plaintiff claims the *Santa Cruz* committed. Judicial estoppel clearly forecloses such a duplicitous result.

(3) Notably, Plaintiff offers no compelling argument to the contrary. Plaintiff creatively argues that the first settlement was for a "secondary" not primary injury. To support this assertion Plaintiff offers his counsel's own deposition. (*See Opposition* Ex. 1 (*Decl. of David Tiffany*)). However, self-serving depositions presented in connection with summary judgment motions are highly disfavored and rarely accorded much probative weight. *See Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1061 (9th Cir.2002) (self-serving and uncorroborated testimony cannot preserve a genuine issue of material fact). This Court sees no reason why this clear Ninth Circuit mandate would alter the application of judicial estoppel here. Nothing before this Court suggests that the *APL Korea* settlement was not for Plaintiff's primary injuries. The pleadings in the first action, and the evidence in this case, do not suggest otherwise.

Plaintiff next argues mistake of fact. This position overlooks key and undisputed evidence to the contrary. For example, Plaintiff's own deposition, along with those of three *Ingomar* crew members, as well as the Coast Guard report, *all* at least point to (if not expressly identify) the *APL Korea* as the swamping vessel. Plaintiff's self-serving attorney testimony and/or the *APL Korea's* third-mate's recount does not alter this conclusion.

It remains undisputed that no less than four persons aboard Plaintiff's vessel, including Plaintiff himself, identified the *APL Korea* as the swamping vessel, not the *Santa Cruz.* The *APL Korea* has compensated Plaintiff $50,000 for those injuries. Having secured those funds, Plaintiff now claims, for the first time, that the *Santa Cruz* swamped Plaintiff's vessel. The positions are clearly inconsistent and

were relied upon by the prior court. To adopt Plaintiff's position here would clearly put Defendant *Santa Cruz* at an unfair advantage. *New Hampshire*, 532 U.S. at 750–51, 121 S.Ct. 1808. In sum, the Court finds that Plaintiff is judicially estopped from asserting that the *Santa Cruz* swamped the *Ingomar*. Consequently, Defendant is entitled to judgment as a matter of law.

### B. SUMMARY JUDGMENT

Even if judicial estoppel did not bar this action (which it does), no genuine issues of material fact remain for trial. In seeking summary judgment, Defendant refers the Court to four depositions (from Plaintiff and crew) all arguing that the *APL Korea* was the swamping vessel. Peculiarly, Plaintiff makes no reference in his opposition to these depositions, save to submit a small portion of Thomas Guth's Deposition, which itself is notable only for its vagueness.

The Court has already established that the party moving for summary judgment must show the absence of a genuine issue of material fact such that the party is entitled to judgment as a matter of law. The moving party can satisfy this burden in two ways: by presenting evidence that negates an essential element of the non-moving party's case, or by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. If the movant meets this burden, then it falls to the non-movant to establish that a genuine issue of material fact does exist.

 Summary judgment is clearly warranted here. The evidence presented essentially speaks with one voice: the *APL Korea* not the *Santa Cruz* swamped the *Ingomar*. No jury could rely on the evidence presented to reasonably find otherwise.

Plaintiff's own deposition and those of three *Ingomar* crew-members assert either directly or indirectly that the *APL Korea*'s wake swamped the *Ingomar*.[1] *See Decl. of Julie A. Mote* Ex. H (*Dep. of Plaintiff Lenn Gagne*) ("The first boat that went by was the APL, with a big APL on the side. That's the one that was coming beam at us. That's when we all panicked. That went by and all the masts and all [sic] went down.") *See id.* Ex. I (*Dep. of Ingomar Captain Kelly*) ("Q. Now, did you on the side of the vessel see any letters? A. I recollect APL, because they were pretty large letters and, again, the ship was very, very close.") *See id.* Ex. J (*Dep. of Crew-member Thomas Preston Guth*) (recollecting the letters of the swamping vessel, stating they were "[l]ike APL or something … I am pretty sure that the first letter was an 'A.'") *See id.* Ex. K (*Dep. of Thomas Guth*) (identifying the swamping vessel as having a black hull and red containers, in these respects resembling the *APL Korea*).

That is the extent of the evidence that a jury could reasonably rely upon to form its conclusions. As to Plaintiff's other submissions:

(1) The Court cannot consider any uncorroborated evidence presented in Plaintiff's counsel's self-serving declaration. *See Villiarimo*, 281 F.3d at 1061.

(2) Plaintiff's Exhibit 1 is a page from the Marine Exchange detailing Long Beach ship departures. While it may reveal that the *APL Korea* and the *Santa Cruz* left on the same morning, it does not preserve a genuine issue for trial. Notably, Plaintiff presents no maritime expert

---

1. Sworn deposition testimony taken from different proceedings may be considered on summary judgment. *Gulf USA v. Fed. Ins. Co.*, 259 F.3d 1049, 1056 (9th Cir.2001).

testimony to suggest the parties' vessel location on that fateful morning.

(3) Plaintiff presents several black-and-white photographs of the *Santa Cruz*. Presumably Plaintiff believes these pictures show a resemblance between the *Santa Cruz* and Thomas Guth's description of the swamping vessel. But the Court fails to grasp how black-and-white pictures corroborate a *black and red* description. This evidence consequently would have no probative value to the trier of fact.

(4) Plaintiff's Exhibit 4 is an excerpt from the *APL Korea*'s Third Mate's deposition. Plaintiff also offers parts of the *APL Korea*'s logbook. Unsurprisingly, the Third Mate says that the *APL Korea* never came near the *Ingomar*. The logbook bears out that assertion. These materials, because of their self-interested source, have little or no evidentiary weight.[2]

(5) Plaintiff submits the Coast Guard Report, which merely states that the *Ingomar* was swamped but later helped to port. The report records nothing indicating that the *Santa Cruz* was in the vicinity, let alone that it was the swamping vessel.

(6) Plaintiff presents an excerpt from Thomas Guth's deposition, in which he described the swamping vessel's color scheme. Once again, Plaintiff presents no evidence relating to the *Santa Cruz*'s color scheme. Therefore, Mr. Guth's testimony has no relevance.

(7) Lastly, Plaintiff presents a letter from Magistrate Judge Stiven urging settlement for the *APL Korea* case. If anything, this evidence argues *against* Plaintiff's position in this case because it shows that Plaintiff's claim against the *APL Korea* was sufficiently strong to merit a six figure proposed settlement.

In short, the evidence presented reveals no genuine issue of material fact. Ironically, it is Plaintiff's own testimony that most strongly favors summary judgment in this case. "The first boat that went by was the APL .... that was when all the masts and all went down." (*Decl. of Julie A. Mote* Ex. H (*Decl. of Lenn Gagne*)). Defendant is entitled to judgment as a matter of law.[3]

### IV. CONCLUSION AND ORDER

In light of the foregoing, the Court holds that Plaintiff is judicially estopped from asserting that Defendant's *Santa Cruz* swamped Plaintiff's *Ingomar*.

The Court **GRANTS** Defendant's Motion for Summary Judgment. (Doc. No. 30–1). The Court **DENIES** Defendant's Motion for Rule 11 Sanctions. (Doc. No.

---

2. Plaintiff's counsel attempts to chart the *APL Korea*'s course using various formulas and "nautical slide rule" techniques. This admissibility of this evidence is tenuous at best. Plaintiff's counsel is no maritime expert, yet he would have this Court assume that his calculations not only are accurate but are those which a layman could compute. *See* FED. R. EVID. 702; *see generally Steward v. Atlantic Refining Co.*, 240 F.2d 715, 720 (3d Cir.1957) ("The translation of the markings of a course recorder into a chart of the ship's path is properly an area in which laymen need the assistance of expert opinion"). Accordingly, the Court rejects the nautical calculations for lack of expert foundational support.

3. Defendant requests sanctions. A complaint is sanctionable under Rule 11 if it is legally frivolous and factually misleading. *Truesdell v. S. Cal. Permanente Med. Group*, 293 F.3d 1146, 1153 (9th Cir.2002). To be frivolous, a filing must be baseless and have been made without reasonable and competent inquiry. *Montrose Chem. v. Amer. Motorists Ins. Co.*, 117 F.3d 1128, 1133 (9th Cir.1997). The Court finds that Plaintiff made a good faith but ultimately losing argument seeking to avoid judicial estoppel. Consequently, sanctions are inappropriate. The Court therefore DENIES Defendant's sanctions request.

37–1) . The Court **DENIES** Defendant's Motion for Security Costs as moot. (Doc. No. 28–1). The Clerk of Court shall close the district court file.

**IT IS SO ORDERED.**