In re **REAL ESTATE ASSOCIATES LIMITED PARTNERSHIP LITIGATION.**

**No. CV 98–7035 DDP (AJWx).**

United States District Court, C.D. California.

Aug. 29, 2002.

Lawrence A. Sucharow, Joseph Sternberg, Christopher J. Keller, Goodkind Labaton Rudoff & Sucharow, New York City, Nicholas E. Chimicles, Candice L.H. Hededus, Chimicles & Tikellis, Haverford, PA, Lionel Z. Glancy, Peter Arthur Binkow, Glancy & Binkow, Los Angeles, CA, Leigh R. Lasky, Lasky & Rifkind, Chicago, IL, for Plaintiffs.

Matthew P. Kanny, Mark Everett Goldman, Alex M. Weingarten, Manatt Phelps & Phillips, Jack P. DiCanio, Proskauer

Rose, Los Angeles, CA, Donald N. David, Robert J. A. Zito, Caryn L. Marcus, Ruth Haber, Beth Fischbein, Kenneth G. Schwarz, Stefanie Gatti, Fischbein Badillo Wagner & Harding, New York City, Joseph P. Cervini, Jr., Daniel S. Hollman, Fischbein Badillo Wagner & Harding, New York City, for Defendants.

## ORDER DENYING PLAINTIFFS' MOTION SEEKING TO APPLY DOCTRINE OF JUDICIAL ESTOPPEL

PREGERSON, District Judge.

This matter comes before the Court on the plaintiffs' motion seeking to apply the doctrine of judicial estoppel to preclude evidence or testimony that the REIT transaction was not a "sale or disposition" of the Local Partnerships' property. After reviewing and considering the materials submitted by the parties, and hearing oral argument, the Court adopts the following order.

### I. Background

It is undisputed that each REAL Partnership acquired its limited partnership interests in the Local Partnerships pursuant to agreements of limited partnership (the "Local Partnership Agreements" or the "Agreements"). The plaintiffs contend that the REIT's simultaneous acquisition of the REAL Partnership's limited partnership interests and the local general partner's general partnership interests in each Local Partnership constituted a "sale or disposition" of all or substantially all of the assets of that Local Partnership. (Corrected Second Restated, Amended and Supplemental Complaint, hereinafter "CSRASC" ¶¶ 52–64.) The plaintiffs allege that:

The Casden Defendants were aware that the economic reality of the REIT Transaction, which included the simultaneous acquisition of the interests of the REAL Partnership and the Local GP, was tantamount to a dissolution or termination of the Local Partnerships. Solely for the convenience and benefit of the Defendants, the Casden Defendants sought to characterize the simultaneous sale and purchase of 100% of the interests of the Local GP and the REAL Partnership in each Local Partnership as something other than a dissolution or termination of the Local Partnerships *and a triggering event for the disposition provisions of the Local Partnership Agreements.* Irrespective of the Casden Defendants' self-serving reasons for not treating the transactions as a dissolution or termination of the Local Partnerships, the fact is that, under the terms of the Local Partnership Agreements, the economic reality of the REIT Transaction mandated the implementation of the dissolution and/or the disposition of property provisions (and the distribution schemes required by those provisions) of the Local Partnership Agreements.

(*Id.* ¶ 62 (emphasis added).)

The plaintiffs contend that the defendants have admitted in another federal litigation, pending before Judge Buchwald in the United States District Court for the Southern District of New York (the "*New Haven Litigation*"), that the transfer to the REIT of New Haven Plaza Associates, L.P. ("NHPA") (one of the 98 Local Partnerships that were involved in the REIT transaction) was a sale transaction.[1] Given this admission, it is argued, the Court should set aside the REIT transaction in

---

**1.** Since 1983, NHPA has been the subject of extensive and continuous litigation. In the 1980s, one of the original general partners sued to dissolve NHPA. In 1985, the New York State Supreme Court directed that the original general partners ("OGPs") be removed as general partners because of their mismanagement, and their interests be converted to limited partners. As a result of the

its entirety because: (1) the Solicitations failed to disclose that the REIT Transaction was a sale or disposition within the meaning of the Agreements; and (2) the REIT transaction was effected by the defendants in a manner that ignored the sale and disposition provisions of the Agreements and disregarded the allocation and distribution terms of those provisions.

Therefore, the plaintiffs move the Court: (1) to conclude that the REIT Transaction was a "sale or disposition" of the Local Partnership properties under the doctrine of judicial estoppel; (2) to preclude the defendants from submitting evidence challenging the Court's determination that the REIT Transaction was a "sale or disposition;" and (3) to rule as a matter of law that the Class is entitled, pursuant to the contractual entitlements of the REAL Partnerships under the Agreements, to its allocable share of the disposition proceeds.

## II. Discussion

### A. *Legal Standard*

The doctrine of judicial estoppel is an equitable doctrine, applied by a court at its discretion. *New Hampshire v. Maine,* 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). The Supreme Court has set forth three factors to be considered in deciding whether to apply the doctrine: (1) the party's later position must be clearly inconsistent with its earlier position; (2) the party has succeeded in achieving judicial acceptance of its earlier position so that judicial acceptance of the later position would create the impression that either the first or second court was misled; and (3) the party asserting the inconsistent position would obtain an unfair advantage through, or impose unfair detriment on, the opposing party if not estopped. *Id.; see also Rissetto v. Plumbers & Steamfitters Local 343,* 94 F.3d 597, 600 (9th Cir. 1996).

### B. *Discussion*

The plaintiffs contend that the REIT Transaction was equivalent to a disposition (or dissolution) under the Agreements, and that the REAL Partnerships' interests as a limited partner of the Local Partnerships included an allocation of the proceeds from the disposition or partial disposition of the partnership property. It is undisputed that, in the *New Haven Litigation,* the defendants took the position that the NHPA transaction was a disposition of partnership property, governed by the Agreements.[2]

realignment of the OGPs as limited partners, Rosewood Apartments Corporation ("Rosewood"), an affiliate of NAPICO, was named as the new general partner, and ultimately, replaced the OGPs as the managing general partner.

The litigation pending in the Southern District of New York was initiated by Rosewood in order to obtain a determination that Rosewood acted properly in selling real estate owned by NHPA without first obtaining the consent of the OGPs. As the managing general partner (and REAL II as the principal limited partner), and as part of the REIT Transaction at issue in this litigation, Rosewood caused the transfer of the general and limited partnership interests in NHPA to Casden Properties Operating Partnership or the REIT.

Following the REIT Transaction, the Casden Defendants instituted the *New Haven Litigation* seeking a declaration that the REIT's acquisition of the NHPA property was effected pursuant to the disposition provisions of the Local Partnership Agreement.

2. The plaintiffs also point to other statements that the defendants made in the litigation referring to the REIT transaction as a sale. For example, according to Individual Defendant Bruce Nelson, "[t]he sale by New Haven Plaza Associates, L.P. ("NHPA" or the "Partnership") of its low income housing project was a small part of a massive transaction involving the sale of approximately 100 housing projects ..." (Chimicles Decl. Vol. X, Ex. 101 ¶ 2.); (Chimicles Decl. Vol. X, Ex. 104 at 3 ("The Partnership's sale of the Project was a

### 1. The Local Partnership Agreements

The plaintiffs argue that the Agreements required that, upon disposition or partial disposition of partnership property, the REAL Partnerships receive distributions of cash from operations (4–1–02 Chimicles Decl. ("I Chimicles Decl.") ¶ 75), and that each REAL Partnership's interests and rights as a limited partner of a Local Partnership included, in part, an allocation of the proceeds (profits and losses) from the disposition or partial disposition of partnership property.[3]

The plaintiffs contend that because the Agreements provided that a "Disposition or Partial Disposition of Partnership Property" could occur upon, *but did not require,* "the dissolution and termination of

the Partnership," the fact that the Local Partnerships were not dissolved or terminated (and continued to exist under the REIT's ownership) does not negate the fact that the REIT Transaction effected a disposition of partnership property, within the meaning of the Agreements.

In contrast, the defendants maintain that the REIT Transaction did not trigger the provisions of the Agreements governing distributions of cash from disposition of property (Answer ¶ 58), and that the distribution amounts paid to the REAL Partnerships were not derived from the allocation regime set forth in the disposition provisions of the Agreements. Instead, the methodology set forth in the Solicitations was used to calculate the Net Distributable Proceeds.

---

small part of a massive transaction in connection with the formation of ... [the] REIT. The transaction involved the sale of approximately 100 housing projects.").)

**3.** Section 4.4 of a representative Local Partnership Agreement provides in part that: "Surplus cash resulting from a Disposition or Partial Disposition of Partnership Property, including but not limited to a dissolution and termination of the Partnership, shall be distributed to the Partners in the following order of priority ..." (Chimicles Decl. Vol I, Ex. 2 (Chidester Place Local Partnership Agreement) at 12.)

The Agreement defines "Disposition or Disposition of Partnership Property" as follows at section 1.6: "any sale or exchange either in one transaction or a series of transactions to one or more buyers pursuant to a plan of disposition formulated by the Operating General Partner, or other disposition, including but not limited to an involuntary disposition giving rise to insurance or other proceeds, of all or substantially all of the Partnership's property." (*Id.* at 3.)

The Agreement defines "Partial Disposition of Partnership Property" at section 1.21 as follows as: "any sale, exchange, or other disposition of property of the Partnership which does not constitute a Disposition of Partner-

ship Property, including but not limited to an involuntary disposition giving rise to insurance or other proceeds." (Chimicles Decl. Vol. II Ex. 18 (Foothill Gardens Local Partnership Agreement) at 5.)

The plaintiffs contend that the REIT Transaction can be regarded either as a disposition of partnership property *or* as a dissolution/termination of the Local Partnerships. The plaintiffs argue that it was improper for the defendants to eschew the disposition and allocation provisions of the Agreements in favor of adopting "a materially different scheme of paying the REALs" according to the methodology set forth in the Solicitations.

The plaintiffs also argue that, in order to circumvent the rights of the REAL Partnerships under the Agreements that would be triggered by the disposition of the property (or dissolution of the Partnerships), the defendants—without adequate disclosure to the REAL limited partners in the Solicitations for consent to the REIT Transaction—caused certain amendments to be made to each of the Agreements as of the date of closing. "The effect of these agreements was to avoid the REAL Partnerships receiving their share of disposition proceeds under the allocation provisions under the terms of the Local Partnership Agreements." (CSRASC ¶ 63.)

### 2. Representations in the New Haven Litigation

The plaintiffs argue that the defendants have admitted in the *New Haven Litigation* that the transfer of the partnership interests to the REIT was a sale or disposition governed by the Agreements. *See e.g.*, Chimicles Decl.Vol. X, Ex. 101 (Nelson Decl.) ¶ 24 ("Section 5.1.6 of the Partnership Agreement specifically authorizes Rosewood to 'sell, lease, or otherwise dispose of the Project.' Section 7.1 requires such a sale or disposition to be with the consent of REAL II.")

In the *New Haven Litigation*, Judge Buchwald evaluated the transaction whereby Rosewood caused the transfer of title to the New Haven Plaza apartments from the NHPA Local Partnership to the REIT. All parties agreed that the question of the legality of the conveyance was governed by the Local Partnership Agreement, and that a disposition of partnership assets had occurred. Judge Buchwald ruled that Rosewood had the right to transfer title without the consent of the OGPs. On separate grounds, the court found that transaction to be invalid.[4] Judge Buchwald also held that triable issues of fact existed regarding whether the plaintiffs (defendants in this action) had violated their fiduciary duties by failing to make the proper distributions to partners under the terms of the Agreement. Therefore, on March 20, 2002, the court ruled that an accounting of the partnership's accounts was appropriate, in order to determine whether Rosewood had breached its fiduciary duties to the limited partners by failing to make distributions in accord with the disposition provisions of the Agreement.

The plaintiffs contend that based on Judge Buchwald's finding that the Agreements are applicable to the NHPA transaction, the defendants should be precluded from asserting in this case that the same REIT transaction does not trigger the same disposition proceed provisions of the NHPA Local Partnership Agreement, or any of the Agreements for the other 97 Partnerships comprising the REIT Transaction.

### 3. Was the NHPA Transaction Unique?

The defendants argue that, out of all the 98 Local Partnerships that were the subject of the REIT Transaction, NHPA was the only property where, after the Limited Partnership interest of REAL II in NHPA was sold to the REIT sub, deeds transferring title of the real estate to a subsidiary of the REIT sub were executed and delivered. In all other cases, the Local Partnerships continued to own the property (including the real estate), and all that was transferred to the REIT were partnership interests. According to the defendants, the NHPA transaction was structured differently to take into account the fact that the OGPs did not vote on the Consent Solicitations because the "no vote or control" provision of the Agreement was invoked. (Defs.' Opp. at 4.)

The plaintiffs dispute that the NHPA transaction was unique. The plaintiffs argue that at least eight of the 98 Local Partnerships had limited partners in addition to the REAL Partnerships, and that therefore this fact does not distinguish NHPA. The plaintiffs also contend that the fact that the NHPA transaction involved deeds transferring title does not distinguish it from the other 97 transactions comprising the REIT transaction. The

---

4. Specifically, Judge Buchwald found that the transfer of the New Haven Plaza property in exchange for operating partnership units violated the provisions governing the purpose of the partnership, which was to "hold title" and "to operate" the property, and was therefore invalid. (Schwarz Decl.Ex. 15 (Court's 6/11/01 Order) at 11–12.)

plaintiffs contend that the NHPA Local Partnership Agreement is identical to all the Agreements implicated by the REIT Transaction, and there is no distinction between the NHPA Transaction and the other 97 transactions regarding the rights and entitlements of the REAL Partnerships under the Agreements.

The plaintiffs also assert that the NHPA transaction was not portrayed as unique in the REAL II Solicitations or other public documents relating to the REIT Transaction, and that the defendants never distinguished between the NHPA project and the other 97 Local Partnerships, or the transactions, in the filings in the *New Haven Litigation*. However, the declaration of Bruce E. Nelson (one of the Individual Defendants in this action), submitted to the Court in the *New Haven Litigation*, specifically states that the NHPA differed from the other Local Partnerships because the REAL Partnerships were not the sole limited partners. (Chimicles Decl.Vol. X, Ex. 101 (Nelson Decl.) ¶ 25.)

### 4. The Plaintiffs' Motion Is Not Timely

■ The defendants argue that the plaintiffs are now seeking judgment on an unpleaded claim: that the defendants breached the Agreements by failing to make distributions to the REAL Partnerships in accordance with the provisions of the Agreements governing disposition proceeds.[5]

The plaintiffs state that their motion "provides the Court with a wholly separate vehicle for imposing liability on Defendants, irrespective of the Court's disposition of the Motion for Partial Summary Judgment." (Pls' Mot. at 1.) At the same time, the plaintiffs later deny that they seek judgment by way of this motion, and contend that the motion only pertains to the admission of evidence or testimony. (Pls' Reply at 11.) According to the Court's Scheduling Order, April 1, 2002 was the last day to file dispositive motions, whereas the plaintiffs did not file this motion until May 24, 2002.

The plaintiffs' delay in bringing this motion before the Court is inexplicable. In a June 11, 2001 Order, Judge Buchwald determined that, "[E]ven though Rosewood had the authority to convey the property without the prior written consent of the [original general partners] ... the conveyance of [NHPA] to the REIT violated [New York State Partnership Law] and ... is therefore invalid." (Schwarz Decl., Ex. 15 (Court's 6/11/01 Order) at 10.) Therefore, Judge Buchwald had ruled long before March 20, 2002 that a sale of the NHPA real estate, within the meaning of the Agreement, had occurred.

### III. Conclusion

The Court finds the fact that the transfer of title to the NHPA real estate occurred after the REAL limited partners had sold their interests in the Local Partnerships to the REIT is dispositive. Because the REAL limited partners no longer owned their interests in NHPA at the time the deed transferring the NHPA property was executed, their rights under the Local Partnership Agreement (for example, those provisions governing the relative entitlements of the limited and general partners to the proceeds of any sale or disposition) were not implicated by the

---

**5.** The defendants also allege that these claims that the Agreements were breached must be brought against the Local Partnerships and general partners of the Local Partnerships, who are not parties to this lawsuit. Finally, the defendants assert that any distributions of the Local Partnerships would have been made to the REAL Partnerships, not to the plaintiffs, and therefore the claim must be brought derivatively on behalf of the REAL Partnerships (which the plaintiffs have not done).

transaction. Therefore, the Court finds no inconsistency between the defendants' position in this litigation (that the REIT Transaction involved the sale of partnership interests and not the sale of assets) and the defendants' position in the NHPA litigation (where title to real estate was transferred after REAL II sold its partnership interest).

Because the defendants' position in this litigation is not clearly inconsistent with their position in *New Haven Litigation,* the application of the doctrine of judicial estoppel is inappropriate. In addition, the plaintiffs' motion is untimely. For these reasons, the motion is denied.

IT IS SO ORDERED.