92 P.3d 492

**Ralph E. SWORD, as Personal Representative of the Estate of Joyce E. Sweet, Deceased, Plaintiff–Respondent,**

v.

**Lawrence L. SWEET, Defendant–Appellant.**

No. 28199.

Supreme Court of Idaho,
Boise, January 2004 Term.

May 5, 2004.

Eismann Law Office, Caldwell, for appellant. Richard B. Eismann argued.

Bevis, Cameron & Johnson, Boise, for respondent. James A. Bevis argued.

SCHROEDER, Justice.

Lawrence Sweet appeals the decision of the district court which affirmed the decision of the magistrate court that an alleged oral agreement regarding a property division of marital property from a November 6, 1991, Indiana court hearing was invalid. The district court denied relief on equitable theories and found that the magistrate court applied the correct asset valuation cut-off date as stipulated by the parties.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Joyce Sweet ("Joyce") and Lawrence Sweet ("Larry") were married on January 18, 1956. In 1971, after numerous moves to several cities and states, the Sweets settled in South Bend, Indiana, where Larry began work with Associates Corporation. Larry ultimately became Senior Vice President and Chief Information Officer of Associates Corporation of North America and President of Associates Bancorp. He retired from Associates in 1995, although he continued to work as an independent consultant for the company. Larry's role as an independent consultant with Associates ended in 1999.

Joyce primarily stayed home and reared the couple's five children, although she was employed briefly in the early 1970's. In 1974 she was diagnosed with cancer which required surgery followed by radiation treatment and chemotherapy. In 1980, she was again diagnosed with cancer, requiring more surgery, radiation treatment, and chemotherapy. The radiation treatments damaged her heart to such a degree that two surgeries were necessary to correct the problem. Her health continued to decline. She passed away shortly after the trial held in June, 2000.

On July 30, 1990, Joyce filed a Petition for Separation in Indiana. On May 14, 1991, she filed a Petition for Dissolution of Marriage in the same case.

On November 6, 1991, both parties appeared in court for a final hearing on Joyce's Petition for Dissolution. Joyce's motion to

dismiss her Petition for Dissolution was granted. Her attorney then announced that the parties had stipulated to terms regarding temporary maintenance and a division of property. Both Larry and Joyce testified as to the terms of this stipulation. Larry claims that an agreement was formed by the parties' testimony. The parties anticipated that the stipulation would be reduced to writing and that they would return to court at some future date to obtain court approval. The Indiana court took the matter under advisement.

After the November 6, 1991, hearing, a transcript was prepared and sent to Larry's attorney who sent a draft of a written agreement, entitled "Postnuptial Agreement" to Joyce's attorney. This agreement attempted to memorialize the terms stipulated to in court. However, the draft agreement differed in several respects from the terms stated in court and was never signed by the Sweets. On February 23, 1993, the Indiana Court dismissed the case for want of prosecution.

Even though the Indiana proceeding had been dismissed, Joyce and Larry followed through with some of the terms stipulated to in court. However, many of the terms of the stipulation were not followed. On May 27, 1999, Joyce filed a Petition for Legal Separation in the Magistrate's Division of the 4th Judicial District, Ada County, Idaho and then transferred to Lincoln County. At the trial in the Idaho separation action, Joyce admitted that she had always intended to attempt, at some point in the future, to change the terms of the Indiana stipulation despite her representations at the Indiana hearing that the stipulation was fair and equitable. On November 20, 2000, the magistrate court entered Findings of Fact and Conclusions of Law and a Decree of Legal Separation granting Joyce's Petition. The magistrate held that the stipulation in Indiana was unenforceable and denied Larry equitable relief. The magistrate also utilized a valuation date contrary to that urged by Larry. Larry appealed to the district court which affirmed the magistrate court decision. He now appeals to this court. Joyce seeks attorney fees.

## II.

### THE "MOST SIGNIFICANT RELATIONSHIP" TEST IS APPLICABLE IN ANALYZING WHICH STATE'S LAW SHOULD BE APPLIED IN THE INTERPRETATION AND CONSTRUCTION OF CONTRACTS

In *Rungee v. Allied Van Lines, Inc.*, 92 Idaho 718, 722–23, 449 P.2d 378, 382–83 (1968), quoting from the then proposed (later officially adopted and promulgated in 1969) official draft of the Restatement Second of Conflict of Laws, Ch. 8, Contracts, the Supreme Court said:

Law Governing in Absence of Effective Parties' Choice. (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the State which, as to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

### *Indiana law regarding contracts controls.*

■ The agreement Larry seeks to enforce was negotiated and allegedly formed while the parties lived in Indiana. A large part of the performance claimed by him took place in Indiana; much of the subject matter of the contract was located in Indiana; and, the parties were domiciled in Indiana. Therefore, under the "most significant relationship" test, Indiana law regarding contracts applies in determining whether the parties reached an enforceable agreement.

## III.

### STANDARD OF REVIEW

This Court exercises free review over matters of law. *Bouten Constr. Co. v. H.F. Magnuson Co.*, 133 Idaho 756, 760, 992 P.2d 751, 755 (1999). In Indiana, the question of whether a certain or undisputed set of facts establishes a contract is one of law for the trial court. *Keating v. Burton*, 617 N.E.2d 588, 592 (Ind.Ct.App.1993), *trans. denied.* Contract formation requires mutual assent on all essential contract terms. *DiMizio v. Romo*, 756 N.E.2d 1018, 1022 (Ind.Ct. App.2001), *trans. denied.* Assent to the terms of a contract may be expressed by acts which manifest acceptance. *Pinnacle Computer Servs., Inc. v. Ameritech Pub., Inc.*, 642 N.E.2d 1011, 1013 (Ind.Ct.App.1994). Acceptance may be expressed in writing. *Young v. Bryan*, 178 Ind.App. 702, 368 N.E.2d 1, 3 (1977).

"[T]here is a general consensus among the courts that separation agreements are to be construed like other contracts and require the same essential elements, and property settlements or *other postnuptial agreements, whether in contemplation of divorce or otherwise*, are generally held to be binding when they are shown to be fair and regular and not the product of fraud, duress, or undue influence, and certainly when they have been fully executed will they be given effect." Williston, Contracts § 11.7 (3d ed.1957) (emphasis added).

## IV.

### THE ALLEGED AGREEMENT IS NOT A VALID ENFORCEABLE CONTRACT

Larry argues that a "meeting of the minds" occurred during the November 6, 1991, court proceedings and that Joyce accepted the terms of the agreement, forming a binding contract. Joyce maintains that a meeting of minds did not take place. The Second Restatement of Contracts states:

Manifestations of assent that are in themselves sufficient to conclude a contract will not be prevented from so operating by the fact that the parties also manifest an intention to prepare and adopt a written memorial thereof; but the circumstances may show the agreements are preliminary negotiations.

Restatement (Second) of Contracts § 27. Although this supports Larry's contention that Joyce's testimony was sufficient to create an agreement, the Comments under this section shed additional light. Comment b. to § 27 states:

On the other hand, if either party regards the agreement as incomplete and intends that no obligation shall exist until other terms are assented to or until the whole has been reduced to another written form the preliminary *negotiations and agreements do not constitute an agreement.*

Restatement (Second) of Contracts § 27, Comment b. Further, Comment c. to § 27 states:

Among the circumstances which may be helpful in determining whether a contract has been concluded are the following: the extent which express agreement has been reached on all the terms to be included, whether the contract is of a type usually put in writing, whether it needs a formal writing for its full expression, whether it has few or many details, whether the amount involved is large or small, whether it is a common or unusual contract, whether a standard form of contract is widely used in similar transactions, and whether either party takes any action in preparation for performance during the negotiations. Such circumstances may be shown by oral testimony or by correspondence or other preliminary or partially complete writings.

Restatement (Second) of Contracts § 27, Comment c.

Larry acknowledged that the parties intended to reduce the agreement to writing during his testimony on November 6, 1991. Larry's attorney asked the following question:

And also that—we reduce this to writing and come back here, that she's agreed that she will sign a document that expresses the terms and conditions of which you've decided to divide your property and either

side could treat that as an exhibit in any further court proceeding and also that that document would be construed according to Indiana law.

To this question, Larry answered, "That's my understanding." Larry acknowledged that the agreement needed to be reduced to writing, and Indiana law requires that postnuptial agreements be reduced to writing (see discussion below). A marital property settlement is the type usually put in writing, and the amount and variety of marital assets at issue were substantial. Following the principles of Restatement (Second) of Contracts § 27, Joyce's testimony was insufficient to create a final agreement.

## V.

### THE ALLEGED AGREEMENT IS NOT A VALID CONTRACT UNDER THE GENERAL PRINCIPLES OF CONTRACT LAW BECAUSE THE AGREEMENT WAS NOT REDUCED TO WRITING AS REQUIRED BY INDIANA STATUTES REGARDING POST–NUPTIAL AGREEMENTS AND THE STATUTE OF FRAUDS

■ At the time the alleged agreement was made, Indiana law stated that "the parties *may agree in writing* to provisions for the maintenance of either of them, the disposition of any property owned by either or both of them . . . ." Ind. Code § 31–1–11.5–10 (emphasis added) (repealed 1997). Larry argues that because the statute applies to the dissolution of marriage it is inapplicable to the current case. However, the district court referred to the Indiana Supreme Court's decision in *Boren* which held that Ind. Code § 31–1–11.5–10 applies to "separation agreement" which it defined as "agreements to resolve claims to property interests which have matured because of marriage status." *In re Marriage of Boren*, 475 N.E.2d at 690, 695 (Ind.1985). This case involves property interests which have matured because of marriage status. The district court correctly held that the requirement of Ind. Code § 31–1–11.5–10 that such agreements be in writing applies.

Indiana Code Section 32-2-1-1, the statute of frauds in effect at the time of the alleged

agreement, since repealed and replaced, required this contract to be in writing. Absent a valid defense to the statute of frauds, this contract would be unenforceable in Indiana even if it is assumed that there was otherwise a sufficient understanding to form a contract.

## VI.

### INDIANA LAW REQUIRES THAT FOR A PROPERTY SETTLEMENT AGREEMENT TO BE VALID, THE AGREEMENT MUST BE APPROVED BY THE COURT

■ Joyce testified at the November 6, 1991, hearing that it was her understanding that they would return and have their agreement approved by the court. Larry also testified that they intended to reduce the agreement to writing and return to the court for approval. This intention on the part of both parties is consistent with the rule set forth by the Indiana Supreme Court in *Truman* that a property settlement agreement not approved by the court resulted in an unenforceable agreement. *Truman v. Truman*, 642 N.E.2d at 230, 235 (Ind.App. 1994). Even if a valid agreement were formed under the general principles of contract law, it appears that the agreement would not be enforceable because it was missing the necessary court approval required in Indiana.

## VII.

### JOYCE IS NOT PREVENTED FROM DENYING THE VALIDITY OF THE ALLEGED AGREEMENT BY THE EQUITABLE GROUNDS OF EQUITABLE ESTOPPEL, PART PERFORMANCE, JUDICIAL ESTOPPEL, LACHES AND/OR UNCLEAN HANDS

Larry maintains that Joyce is prevented from denying the validity of the alleged agreement on various equitable grounds.

#### A. Standard of Review

■ The magistrate court's decision concerning the application of the doctrines of

part performance, equitable estoppel, promissory estoppel, laches and/or unclean hands is reviewed under the abuse of discretion standard. The defense of laches is a creation of equity and is a specie of equitable estoppel. *Huppert v. Wolford*, 91 Idaho 249, 420 P.2d 11 (1966). Whether a party is guilty of laches primarily is a question of fact and therefore its determination is within the province of the trial court. *Id.* The decision to apply laches is committed to the sound discretion of the trial court. *Id.* Because application of laches is discretionary, the standard of review on appeal is whether the trial court properly found (1) a lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense. *Preservation Coalition, Inc. v. Pierce*, 667 F.2d 851, 854 (9th Cir.1982). As a corollary, the denial of a defense of laches by the trial court will be upheld in the absence of an abuse of discretion. The same standard is applicable to the other equitable claims Larry makes.

To determine whether a trial court has abused its discretion, the court considers whether it correctly perceived the issue as discretionary, whether it acted within the boundaries of its discretion and consistently with applicable legal standards, and whether it reached its decision by an exercise of reason. *Lamar Corp. v. City of Twin Falls*, 133 Idaho 36, 40, 981 P.2d 1146, 1150 (1999).

**B. The trial court did not abuse its discretion in failing to apply the equitable defenses of equitable estoppel and part performance.**

The doctrines of equitable estoppel and part performance are viewed together. Under Idaho law, part performance per se does not remove a contract from the operation of the statute of frauds. Rather, "[t]he doctrine of part performance is best understood as a specific form of the more general principle of equitable estoppel." *Frantz v. Parke*, 111 Idaho 1005, 1007–08, 729 P.2d 1068, 1070–71 (Ct.App.1986). *See also Wing v. Munns*, 123 Idaho 493, 500, 849 P.2d 954, 961 (Ct.App.1992). In Indiana, the facts necessary to establish equitable estoppel are:

1) The representation or concealment of material facts;

2) Made with knowledge of the facts;

3) The party to whom it was made must have been ignorant of the matter;

4) It must have been made with the intention that the other parties should act upon it;

5) The other party must have been induced to act upon it.

*Hargis v. United Farm Bureau Mut. Ins. Co.*, 180 Ind.App. 432, 388 N.E.2d 1175, 1179 (1979). On this subject, the district court stated:

It is not necessary to analyze all the elements of equitable estoppel, since as stated above the party claiming equitable estoppel must have "lack of knowledge and of the means of knowledge of the truth as to the facts in question." This requirement was not met by Larry, since he testified at the Indiana hearing that the parties' intention was to reduce the stipulation to an enforceable writing under Indiana law and obtain court approval .... Larry also knew that the separation action in Indiana had been dismissed for lack of prosecution. Therefore, Larry knew that further steps were required to forge the stipulation into an enforceable settlement agreement. Due to this knowledge, Larry cannot be said to have been ignorant of the possibility that Joyce would later attempt to assert her rights to her share of the community estate. Thus, Larry's equitable estoppel claim must fail.

For part performance to be established, the Indiana Supreme Court has stated that "where one party to an oral contract in reliance on that contract has performed his part of the agreement to such an extent that repudiation of the contract would lead to an unjust or fraudulent result, equity will disregard the requirement of a writing and enforce the oral agreement." *Summerlot v. Summerlot*, 408 N.E.2d 820, 828 (Ind.Ct App. 1980). American Jurisprudence, Second Edition sheds additional light on the doctrine of part performance:

The acts of part performance, in order to be effective to remove an oral agreement from the operation of the statute of frauds,

must be clearly and unequivocally referable to and induced by the contract relied upon .... They must be acts that would not have been done except for the contract. Generally, in order to take a case out of the statute, the acts of part performance must be referable solely to the contract that is to be enforced and not to any other. The acts must be consistent with the contract pleaded and proved, and they must be inconsistent with any other reasonable theory or hypotheses that the acts were pursuant to such contract. *If the acts are reasonably explicable on some other ground ... they are not sufficient to take the case out of the statute.*

73 Am.Jur.2d Statute of Frauds § 320 (emphasis added). Regarding the issue of part performance, the district court stated:

[P]ursuant to the Indiana stipulation, it is hard to see what "unjust or fraudulent result" would be caused by invalidating the stipulation under the Statute of Frauds .... A majority of the acts performed by Larry were not consistent with the terms of the stipulation, while the other acts were cancelled out by Larry's nonperformance. Therefore, the doctrine of part performance cannot apply in this case under Indiana law.

The evidence does not lead to the conclusion that equitable estoppel is proper or there was part performance in this case. The trial court was well within its discretion when it determined that the essential elements of ignorance of the matter and detrimental reliance are missing. Further, part performance requires that there be a valid contract in place, which is not the case in the present case. Both parties understood the requirement and expressed the intention to return the agreement to the court in writing for its approval. Larry knew or should have known that an unwritten, unapproved property settlement agreement was unenforceable under Indiana law and was akin to having no agreement at all.

Although Larry did send some financial support to Joyce that closely matched some terms of the alleged agreement, he was under a legal duty to support his spouse even without the alleged agreement. The fact that he did some things consistent with the agreement that he was obligated to perform without the agreement does not support enforcement of the agreement.

It was in Larry's best interests not to perform under the agreement. Rather than the non-enforcement of the alleged agreement resulting in an unjust or fraudulent result to him, Larry's non-execution of the agreement worked in his favor. The assets that were to be transferred to Joyce under the Alleged Agreement were sizeable—totaling $638,159. In the time between the November 6, 1991, hearing and the commencement of the Idaho proceedings, the assets increased in value to $5,115,022. It is understandable that Larry would be hesitant to relinquish control of $638,159, especially given his obvious investment skills, and expertise. Regardless of his skills much of the accumulation of wealth during those nine years can be attributed to the retention of control of all the assets discussed at the time of the alleged agreement. Even if the alleged agreement and Larry's equitable defenses were deemed valid, Larry's continued management of Joyce's assets would mean that any appreciation on those assets would be hers. No unjust or fraudulent result occurs by not applying the doctrine of part performance or equitable estoppel.

## C. Laches

■ In not finding Joyce guilty of laches, the district court stated:

Even though 9 years lapsed before Joyce officially challenged the Indiana stipulation's validity, Larry must also show that he had "lack of knowledge" that Joyce would assert such a position in order for laches to apply in this case. The trial court concluded that Larry had not satisfied this element, since he "knew there was no decree and he knew that the property had not been divided according to the Indiana Agreement" .... As stated before, Larry testified at the Indiana hearing that the parties' intention was to reduce the stipulation to an enforceable writing under Indiana law and *obtain court approval* .... Larry also knew that the separation action in Indiana had been dis-

missed for lack of prosecution. This shows that Larry had knowledge of the possibility (and really the certainty) that Joyce would someday assert her rights to the community estate. Therefore, the trial court was correct in holding that the doctrine of laches did not apply.

The district court's analysis of the magistrate court's determination is well stated. The magistrate court did not err in determining that the doctrine of laches did not apply.

## D. Unclean Hands

 In Indiana the principle of unclean hands is that "he who comes into equity must come with clean hands." *Keller v. Ind. Dept. of State Revenue,* 530 N.E.2d 787, 788 (Ind. Tax Ct.1988), *appeal dismissed,* 549 N.E.2d 372 (Ind.1990) (citing *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.,* 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381 (1945); *Roberts v. Vonnegut,* 58 Ind.App. 142, 104 N.E. 321 (1914)). The doctrine of unclean hands is not favored and must be applied with reluctance and scrutiny. *Shriner v. Sheehan,* 773 N.E.2d 833, 847–48 (Ind. Ct.App.2002) (citation omitted). For the doctrine of unclean hands to apply, the misconduct must be intentional, *id.* (citation omitted), and the wrong that is ordinarily invoked to defeat a claimant by using the unclean hands doctrine must have an " 'immediate and necessary relation' to the matter before the court." *Keller,* 530 N.E.2d at 788 (quoting *Keystone Driller Co. v. Gen. Excavator Co.,* 290 U.S. 240, 54 S.Ct. 146, 78 L.Ed. 293 (1933); *Powell v. Mobile Cab & Baggage Co.,* 263 Ala. 476, 83 So.2d 191 (1955)).

> The maxim in question is said not to affect all "sinners" or to embrace general iniquitous conduct, and not to comprehend all moral infirmities, the reason being that courts of equity are not primarily engaged in the moral reformation of the individual citizen. *Keller,* 530 N.E.2d at 789 (quoting 27 Am.Jur.2d Equity § 138 (1974)).

*Wedgewood Community Ass'n, Inc. v. Nash,* 781 N.E.2d 1172 (Ind.App.2003).

 The Idaho definition of the rule is closely related. The doctrine of "unclean hands" is based on the maxim that, "he who comes into equity must come with clean

hands." *Gilbert v. Nampa School Dist. No. 131,* 104 Idaho 137, 145, 657 P.2d 1, 9 (1983). It allows a court to deny equitable relief to a litigant on the ground that his or her conduct has been "inequitable, unfair and dishonest, or fraudulent and deceitful as to the controversy at issue." *Gilbert, supra; see also Hoopes v. Hoopes,* 124 Idaho 518, 522, 861 P.2d 88, 92 (Ct.App.1993); 27 Am.Jur.2d. Equity § 126 (1996). In determining if this doctrine applies a court has discretion to evaluate the relative conduct of both parties and to determine whether the conduct of the party seeking an equitable remedy should, in the light of all the circumstances, preclude such relief. *Curtis v. Becker,* 130 Idaho 378, 941 P.2d 350 (Ct.App.1997). A trial court's decision to afford relief based on the unclean hands doctrine, or to reject its application, will not be overturned on appeal absent a demonstration that the lower court abused its discretion. *Gilbert,* 104 Idaho at 145–46, 657 P.2d at 9–10.

On this subject, the district court stated:

> Although Larry is correct in arguing that Joyce's conduct should be the focus of an unclean hands analysis, his conduct is not totally irrelevant. As stated above, the trial court "has the discretion to evaluate the conduct of both parties" in applying the doctrine of unclean hands .... In this case, the trial court used this discretion to conclude that Larry's shortfalls regarding the Indiana stipulation prevented him from asserting that Joyce had unclean hands. This court agrees, since a majority of the acts performed by Larry were not consistent with the terms of the stipulation, while the other acts were cancelled out by Larry's nonperformance. Therefore, it was not error for the trial court to consider Larry's conduct in determining if the doctrine of unclean hands applied.

 Larry's assertion of the doctrine of "unclean hands" is misplaced. The parties entered into an unwritten, unapproved property settlement agreement in Indiana, the laws of which make the agreement unenforceable. Larry seeks to first establish binding legal significance to the agreement. Second, he argues that even if the agreement

is not legally binding, the writing requirements should not apply on the basis that his performance under the agreement made the writing and court approval requirements unnecessary under equitable principles. Joyce, on the other hand, asserts a legal argument that her testimony did not create an enforceable agreement. In both Idaho and Indiana, the "unclean hands" doctrine applies only to the party seeking an equitable remedy. Larry seeks the equitable remedy, not Joyce.

Larry attempted to walk a fine line between performance and non-performance in which he sought to enjoy the benefits of the alleged agreement (preventing Joyce from initiating further action against him) while avoiding the ultimate transfer of control of roughly half of "his" wealth to his estranged spouse. The doctrine of unclean hands would only apply in this case to bar Larry from claiming any equitable remedy.

### E. Judicial Estoppel

The application of judicial estoppel is one of discretion. In *McKay v. Owens*, 130 Idaho 148, 152, 937 P.2d 1222, 1226 (1997), the Court referred to the *Rissetto v. Plumbers and Steamfitters Local*, which applied the doctrine of judicial estoppel and stated the doctrine and the policies behind it:

Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position.

*Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir.1996). There are also important policies behind judicial estoppel. In *Rissetto*, the Ninth Circuit stated that:

The policies underlying preclusion of inconsistent positions are general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings .... Judicial estoppel is intended to protect against a litigant playing fast and loose with the courts .... *Because it is intended to protect the dignity of the judicial process, it is an equitable doctrine invoked by a court at its discretion.*

*Id.* at 601 (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir.1990) (emphasis added), *cert. denied*, 501 U.S. 1260, 111 S.Ct. 2915, 115 L.Ed.2d 1078 (1991)). On this issue, the district court stated:

Even if the trial court had relied on the Idaho law regarding the issue, "inconsistent and contrary allegations or testimony" by Joyce would still need to be present in order for judicial estoppel to be applicable .... At the November 6, 1991 hearing in Indiana, Joyce testified that she intended for the stipulation construed according to Indiana law, which renders such stipulation unenforceable. These positions are not "inconsistent and contrary."

Further, the Indiana "Agreement" was required to be in writing. The parties also understood that it was a temporary agreement, which died with the dismissal in Indiana. Therefore, Joyce's return to the court could clearly be anticipated and there was nothing inconsistent with her position of seeking an equitable division of property as it existed then and as it exists now.

It does not appear that Joyce was attempting to play "fast and loose" with the court system and did not show disregard for the judicial system. Her testimony on November 6, 1991, stated that she intended to take the necessary steps to make a preliminary agreement legally binding under Indiana law. Her position in this case is merely that those steps were not taken and that as such, the agreement is not enforceable by Larry in law or equity. The trial court did not abuse its discretion in refusing to apply the doctrine of judicial estoppel to Joyce.

### VIII.

### THE TRIAL COURT PROPERLY APPLIED THE CORRECT CUT–OFF DATE AND VALUED THE DIVISION OF PROPERTY

One of the assets the trial court divided was a Merrill Lynch Account. The trial court entered a qualified domestic relations order on this account awarding $112,404 to Joyce. On September 28, 2001, Larry filed a motion to clarify the division of

the Merrill Lynch account to apply the percentage of ownership in this account, rather than the dollar amount, because of the sharp decline in the market value of the securities contained in the account. This sharp decline in market value resulted in Joyce's receiving the full amount of her share valued at June 5, 2000, values and Larry's absorbing the losses in the account since June 5, 2000. The trial court denied Larry's motion. This results in Joyce's receiving the sum of $112,404 and Larry's absorbing the market decline, which reduced his original share of $237,645 to his estimate share of $83,624. Larry maintains this does not result in a substantially equal division of this account or of the community property.

The trial court ruled that the parties were bound by their stipulation to use the value on June 5, 2000. In *Ross v. Ross,* 117 Idaho 548, 789 P.2d 1139 (1990) the Court has stated that any fluctuation in value of marital assets is not a reason to modify the division. Larry correctly points out that since the cut-off date of June 5, 2000, the value of the Merrill Lynch account has diminished substantially in value and the full amount of that devaluation is absorbed by him. Had the economy been different, the value of the investment account might have increased to Larry's benefit. During the relevant time Larry remained in control of the account and to a degree the value was dependent upon his investment decisions. Had there been no division of property, his assets still would have been diminished due to stock market fluctuations and investment decisions. The trial court applied the correct cut-off date for property valuation.

## IX.

### THE ESTATE OF JOYCE SWEET IS ENTITLED TO ATTORNEY FEES ON APPEAL

The estate of Joyce Sweet requests attorney fees on appeal pursuant to Idaho Code § 12–121 and Rule 54(e)(1), I.R.C.P. on the basis that the appeal to this Court is unreasonable and without foundation. The district court denied the request for attorney fees in the appeal from the

magistrate court. "That discretionary determination, however, does not control this Court's independent determination, on a subsequent appeal, of whether the appeal was brought frivolously or without foundation." *Everitt v. Higgins,* 122 Idaho 708, 714, 838 P.2d 311, 317 (Ct. App. 1992).

The appeal in this case involves numerous, but settled issues of law and dissatisfaction with the factual findings of the magistrate court. Those findings are supported by the evidence. This appeal is unreasonable. *Reed v. Reed,* 137 Idaho 53, 62, 44 P.3d 1108, 1117 (2002). The estate of Joyce Sweet is entitled to attorney fees on appeal.

## X.

### CONCLUSION

The decision of the magistrate court, upheld by the district court is affirmed. Costs and attorney fees are awarded to Joyce Sweet's estate.

Chief Justice TROUT, Justices KIDWELL and BURDICK and Pro Tem Justice WALTERS concur.