**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 52992**

| | |
|---|---|
| **CHRISTOPHER D. JONES,** | **Filed: April 20, 2026** |
| **Petitioner-Appellant,** | **Melanie Gagnepain, Clerk** |
| v. | |
| **JESSICA A. JONES,** | **THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY** |
| **Respondent-Respondent on Appeal.** | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Gerald F. Schroeder, District Judge. Hon. David Lorello, Magistrate.

Decision of the district court, on intermediate appeal from the magistrate court, affirmed.

Christopher D. Jones, Meridian, pro se appellant.

Leon Rothstein, Attorney at Law; Leon Rothstein, Boise, for respondent.

---

HUSKEY, Judge

Christopher D. Jones appeals from the decision of the district court, on intermediate appeal from the magistrate court, affirming the denial of his second motion for relief from judgment. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Christopher[1] and Jessica A. Jones were a married couple. They filed a stipulation for the entry of a judgment and decree of divorce on October 25, 2021. During their marriage, Christopher owned a company--Burst Biologics. Based on the value of Burst Biologics at the time Christopher and Jessica executed the stipulation, they agreed that Christopher would make an equalization payment to Jessica in the amount of $1,150,000 for her share of their community property. They agreed Christopher would pay Jessica $200,000 upon entry of the judgment and the remaining

---

[1]    This Court's opinions generally refer to parties by their surnames. However, the parties in this case share the same surname and so for clarity, the Court will identify the parties by their first names. No disrespect is intended by this designation.

1

balance, amortized over eight years with an interest rate of five percent, would be paid in monthly payments of $12,026.92. As security for the debt, Christopher agreed to execute a promissory note with the remaining balance and deliver the note to Jessica "commensurate with the entry of [the] Judgment." As further security, and until the balance is paid in full, Christopher agreed to maintain a life insurance policy equal to or more than the amount owed to Jessica; in the event Christopher dies before the balance is paid, the amount owed would be payable to Jessica. Christopher and Jessica also agreed Christopher could pre-pay the remaining balance at any time without penalty. The stipulated judgment and decree of divorce was entered by the magistrate court on October 29, 2021.

Several months before Christopher entered the stipulation with Jessica, the United States Food and Drug Administration (FDA) began investigating Burst Biologics. After the judgment was entered in the divorce proceeding, the FDA issued a warning letter which caused Burst Biologics to suffer a significant loss of business. Christopher chose not to challenge the FDA's findings and instead, closed Burst Biologics and declared bankruptcy.

On October 27, 2022, Jessica filed a motion for contempt after Christopher failed to make the monthly equalization payments. Christopher entered a not guilty plea, stating he was unable to comply with the judgment. On January 3, 2023, Christopher filed a motion for relief from the judgment pursuant to Idaho Rule of Family Law Procedure 805, requesting the magistrate court modify the equalization payment to match the current value of Burst Biologics, which was now "valueless." In the alternative, Christopher requested that the magistrate court set aside the judgment. Jessica objected. Following a hearing, the magistrate court entered an order denying Christopher's motion. The magistrate court found that Christopher did not establish adequate grounds for relief from the judgment under I.R.F.L.P. 805. Jessica then petitioned the magistrate court for a money judgment.

Christopher filed a successive motion for relief on August 7, 2024, repeating the same arguments from his first motion. Jessica again objected and a hearing was held. The magistrate court denied Christopher's second motion, finding it was untimely pursuant to I.R.F.L.P. 805(c). Alternatively, the magistrate court found there was no basis for relief pursuant to I.R.F.L.P. 805(a) or (b)(1) through (6).

Christopher appealed to the district court. Sitting in its appellate capacity, the district court affirmed the denial of Christopher's motion, holding the magistrate court properly determined

there were no grounds for relief. The district court awarded Jessica attorney fees and costs on appeal. Christopher appeals.

## II.

## STANDARD OF REVIEW

For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate court, we review the record to determine whether there is substantial and competent evidence to support the magistrate court's findings of fact and whether the magistrate court's conclusions of law follow from those findings. *Pelayo v. Pelayo*, 154 Idaho 855, 858-59, 303 P.3d 214, 217-18 (2013). However, as a matter of appellate procedure, our disposition of the appeal will affirm or reverse the decision of the district court. *Id*. Thus, we review the magistrate court's findings and conclusions, whether the district court affirmed or reversed the magistrate court and the basis therefore, and either affirm or reverse the district court.

The standard of review for asserting whether a trial court erred in denying an I.R.F.L.P. 805 motion is an abuse of discretion. *See Robirds v. Robirds*, 169 Idaho 596, 604, 499 P.3d 431, 439 (2021) (noting I.R.F.L.P. 805 is patterned after Idaho Rule of Civil Procedure 60(b)), the standards for reviewing decisions under I.R.C.P. 60(b) are well-established, and the decision to grant or deny a motion under I.R.C.P. 60(b) is committed to the discretion of the trial court). Before applying its discretion, a determination under I.R.C.P. 60(b), and therefore also I.R.F.L.P. 805, turns largely on questions of fact to be determined by the trial court. *Robirds*, 169 Idaho at 604, 499 P.3d at 439. Those factual findings will be upheld unless they are clearly erroneous. *Id*. When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

## III.

## ANALYSIS

Christopher argues the magistrate court erred in denying his "renewed" motion for relief and the district court erred in affirming the magistrate court's denial. Christopher raises four issues

3

on appeal: (1) the magistrate court's first denial rested on *Chevron*[2] deference that "*Loper Bright*[3] declared unconstitutional" and the district court erred by refusing to apply *Loper Bright* because it is "current law" governing this case; (2) his renewed motion for relief was timely under I.R.F.L.P. 805; (3) the enforcement of the judgment violates I.R.F.L.P. 805(b)(5) and (6) because performance is "mathematically impossible"; and (4) federal law prohibits state courts from "treating reliance on federal procedural rights as 'unreasonable' and finding post-judgment procedural departures 'foreseeable.'"

Jessica argues: (1) the magistrate court's denial did not rest on *Chevron* deference and the district court did not err by refusing to apply *Loper Bright*; (2) Christopher's initial motion for relief was untimely and his renewed motion did not present new controlling law; (3) the enforcement remains equitable; and (4) there are no federal law issues relevant to, nor preserved for, this appeal.

## A. Federal Law Does Not Apply

Christopher argues that state courts must apply federal law in state family law cases and "federal law governs the central question" in this case. Christopher argues *Loper Bright* is relevant as to *why* he no longer has the current ability to make the equalization payment and thus, the magistrate court erred in denying his motion and refusing to consider the impact of *Loper Bright*. Christopher is incorrect.

> Actions for divorce are entirely statutory, and courts are bound to follow the scheme enacted by the legislature, without adding or deleting requirements to conform to judicial notions of fairness. Such actions were unknown to the common law. Marital dissolutions are thus statutory proceedings. Jurisdiction to decide such cases is conferred on the courts by the legislature.

24 AM. JUR. 2d *Divorce and Separation* § 7 (2025).

The magistrate court found that what the FDA did or did not do, and thus, the application of *Loper Bright*, was irrelevant to this divorce case.[4] We agree. Whether the FDA engaged in improper regulatory practices (a claim Christopher supports only by his statements as he has failed to challenge the FDA's procedures or rulings in federal court) and whether *Loper Bright* applies

---

[2] *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

[3] *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024).

[4] The magistrate court also disagreed with Christopher's interpretation of the holding of *Loper Bright*. Because *Loper Bright* is not relevant to this case, we need not address its holding or whether the magistrate court correctly interpreted the case.

4

to the FDA's rulings is irrelevant as to whether Jessica is entitled to the equalization payment ordered in an Idaho family law case, in an amount and structure to which Christopher willingly stipulated. We agree with the magistrate court that the FDA's actions against Christopher's business and whether those actions were justified, are not relevant to whether Christopher is required to pay Jessica the share of their community property they agreed upon. Accordingly, the district court did not err in affirming the magistrate court's finding that *Loper Bright* does not apply in this case.

**B.     Timeliness of the Motion for Relief**

Christopher argues his renewed motion for relief was timely under I.R.F.L.P. 805 because he filed his first motion approximately eleven months after the post-judgment FDA actions and filed his second motion approximately forty days after *Loper Bright* was issued. More specifically, Christopher argues the magistrate court and district court erred in measuring the timeliness of his motion from the entry of the judgment rather than from the post-judgment events (the FDA actions), which formed, according to Christopher, the basis for relief. Christopher further argues his second motion was timely because the divorce case was being "actively litigated" based on Jessica's request for money judgments and when a case is in "active enforcement, a party's motion for relief is timely if filed while enforcement proceeds."

Although Christopher did not appeal the judgment or the order denying his first motion for relief, I.R.F.L.P. 805 provides grounds for relief from a judgment in some circumstances:

> (a) Relief from Judgment or Order. The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice. But after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave.
> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> > (1) mistake, inadvertence, surprise, or excusable neglect;
> > (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 804(b);
> > (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> > (4) the judgment is void;
> > (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

5

(6) any other reason that justifies relief.
(c) Timing and Effect of the Motion.
(1) Timing. A motion made under subsection (b) must be made within a reasonable time, and for reasons (1), (2), and (3) no more than 6 months after the entry of the judgment or order or the date of the proceeding.
(2) Effect on Finality. The motion does not affect the judgment's finality or suspend its operation.

The original judgment was entered on October 29, 2021. Christopher filed his first motion for relief on January 3, 2023, which was denied in January 2024, and his second motion was filed on August 7, 2024. The magistrate court concluded Christopher's second motion was untimely from both the entry of the judgment and the order denying Christopher's first motion. The magistrate court explained that because it had been more than three years since the entry of the judgment and more than six months since the entry of the order denying the first motion, Christopher's second motion was not filed within a reasonable time.

Christopher cites to *Pizzuto v. State*, 168 Idaho 542, 552, 484 P.3d 823, 833 (2021) to support his argument that what constitutes a "reasonable time" under I.R.F.L.P. 805(b)(6) is a fact-specific inquiry and under "*Pizzuto*'s fact-specific inquiry, the relevant date is when circumstances warranting relief arose, not the original judgment date." Christopher argues his motions for relief were both timely under the rule because they were filed "well within a reasonable time" of the FDA's actions and the issuance of *Loper Bright*. Christopher further argues the magistrate court's and district court's use of the entry of the judgment as the measurement for timeliness to file an I.R.F.L.P. 805 motion is an abuse of discretion "under *Pizzuto*'s flexible standard" because the courts failed to account for seven post-judgment events including the "emergence of new controlling law (*Loper Bright* []) invalidating the framework used to deny the first motion."

Christopher's reference to *Pizzuto* does not bolster his argument. While we do not agree with Christopher's interpretation of the holding in *Pizzuto*, it need not be addressed here because the application of *Pizzuto* is premised upon the FDA's actions and the application of *Loper Bright*. As discussed above, the FDA regulatory actions and the issuance of *Loper Bright* have no applicability to this case; thus, neither the FDA's actions nor the issuance of *Loper Bright* are a date from which to measure timeliness or are a basis to toll the filing deadlines for Christopher's second motion for relief.

As to Christopher's claim that the magistrate court and district court erred by using the entry of the judgment as opposed to other circumstances, his claim fails for two procedural reasons.

First, Christopher only provides a conclusory statement and fails to provide any cogent argument about how or why the magistrate court and district court erred in using the entry of the judgment as the relevant date from which to measure the timeliness of his second motion. A party waives an issue on appeal if either argument or authority is lacking. *Powell v. Sellers*, 130 Idaho 122, 128, 937 P.2d 434, 440 (Ct. App. 1997). Second, Christopher fails to cite to the abuse of discretion standard, articulate which of the four prongs is at issue, and explain how the magistrate court and district court abused their discretion vis á vis that prong. Failure to support a claim with citation to authority and argument results in a waiver of the claim on appeal. *Id*.

However, even if Christopher's timeliness claim is addressed on the merits, it still fails. The magistrate court concluded that the relevant date was the entry of the judgment, and the timeliness of Christopher's second motion would be measured from that date. This conclusion is supported by precedent. In *McBride v. McBride*, 112 Idaho 959, 960 739 P.2d 258, 259 (1987), after the entry of the judgment and divorce decree, the former wife moved to modify and vacate a portion of the decree related to the division of property. The magistrate court denied the petition to modify under I.R.C.P. 60(b), and the Idaho Supreme Court affirmed the magistrate court, holding that, "In the absence of an appeal from an original decree of divorce the property division portions of that decree are final, res judicata, and no jurisdiction exists to modify property provisions of a divorce decree." *McBride*, 112 Idaho at 961, 739 P.2d at 260. Thus, if the original judgment and decree of divorce become final when entered (absent an appeal), that is the date from which the timely filing of subsequent motions is measured.

Similarly, in *Ross v. Ross*, 117 Idaho 548, 549-50, 789 P.2d 1139, 1140-41 (1990), years after the judgment and decree of divorce was entered, the former wife attempted to modify the judgment as it related to the property settlement; the magistrate court denied the motion and the district court affirmed the magistrate court. The former wife filed a second motion to modify, and the magistrate court again denied the motion finding the issue was res judicata. The Idaho Supreme Court affirmed the magistrate court and reiterated its holding in *McBride*. The Court reasoned that after the denial of the first motion was affirmed by the district court, the magistrate court's decision became final because it was not appealed beyond the district court's affirmance. *Ross*, 117 Idaho at 553, 789 P.2d at 1144.

Here, the magistrate court explained that because Christopher's second motion for relief was filed more than three years from the entry of the judgment, it was not timely. The magistrate

7

court also considered the date of the order denying Christopher's first motion and noted the second motion was still not timely as it had not been filed within six months of that order. Moreover, the magistrate court found the untimely filing of the second motion was not reasonable given what Christopher knew at the time he entered the stipulation.

Before Christopher and Jessica executed the stipulation, Christopher knew the FDA was investigating Burst Biologics and, according to Christopher, was engaging in unreasonable regulatory action, and that such an investigation could negatively impact his business. Despite having this knowledge, Christopher proceeded with the stipulation. The October 2021 judgment became final once neither Christopher nor Jessica filed an appeal. In February 2022, the FDA issued a warning letter. Although Burst Biologics' business had been negatively impacted, Christopher waited approximately eleven months before filing his first motion for relief. Thereafter, the magistrate court's January 2024 order denying Christopher's first motion became final when Christopher declined to appeal the denial. Christopher then waited approximately eight months before filing his second motion. The only basis Christopher provided for filing his second motion was the issuance of *Loper Bright*, which is irrelevant to this case. As such, there was no new factual basis for filing the second motion.

Like in *McBride* and *Ross*, neither the magistrate court nor the district court erred in identifying the entry of the judgment as the relevant date from which to measure the timeliness of Christopher's second motion for relief. For purposes of the community property equalization payment, Christopher and Jessica agreed to the value of the property, including the value of Burst Biologics, as of the date of the stipulation and the judgment and decree of divorce. Consequently, any claim of relief from the judgment as to the valuation of Burst Biologics (or any other asset for that matter) accrued as of the date of the judgment and decree of divorce.

Christopher's second motion was filed more than six months from both the October 2021 judgment and the January 2024 order denying his first motion; thus, as to any claims raised pursuant to I.R.F.L.P. 805(b)(1)-(3), those claims are untimely. As to Christopher's claim regarding reasonableness, the magistrate court explained that any filing delay was unreasonable in light of all that Christopher knew at the time of the denial of his first motion.

The magistrate court did not err in finding Christopher's second motion for relief was untimely and the district court, acting in its appellate capacity, did not err in affirming the magistrate court's denial of Christopher's second motion for relief.

8

## C.     Characterization of Second Motion for Relief

The magistrate court considered Christopher's second motion for relief as a successive motion. The magistrate court noted Christopher's first motion sought relief pursuant to I.R.F.L.P. 805 and listed three grounds, but his second motion, which set forth the same arguments raised in the first, addressed all six subsections of I.R.F.L.P. 805(b). The district court, sitting in its appellate capacity, concluded Christopher's second motion was "essentially a motion to reconsider" the denial of his first motion because it raised the same argument and authority. The district court then found Christopher's second motion was improperly filed pursuant to I.R.F.L.P. 503(b)(2), which states: "No motion to reconsider an order of the court entered on any motion under Rules 303, 801, 804, or 805 may be made."

Christopher argues his second motion was not a repetition of his first motion because it presented a "fundamentally different legal argument" based on the issuance of *Loper Bright*. More specifically, he argues *Loper Bright* is relevant to the magistrate court's determination because it helps decide whether the impact of the FDA investigation on Burst Biologics was foreseeable. Christopher's challenge to the magistrate court's and district court's characterization of his second motion for relief as a motion to reconsider fails for four reasons. First, this Court cannot assess whether the magistrate court or the district court correctly concluded that Christopher's second motion contained the same arguments as his first motion and was, in essence, a motion to reconsider because the relevant documents are not in the record. These include: (1) the stipulation regarding the property settlement; (2) Christopher's first motion for relief and supporting memorandum; (3) the magistrate court's order denying Christopher's first motion for relief; and (4) Christopher's second motion for relief and supporting memorandum. It is the responsibility of the appellant to provide a sufficient record to substantiate his or her claims on appeal. *Powell*, 130 Idaho at 127, 937 P.2d at 439. In the absence of an adequate record on appeal to support the appellant's claims, we will not presume error. *Id.*

Second, while Christopher challenges both the magistrate court's and the district court's characterization of his second motion as a motion to reconsider, he fails to cite to anything in the record to support his argument. A party waives an issue on appeal if either argument or authority is lacking. *Id.* at 128, 937 P.2d at 440. Third, although Christopher argues the magistrate court abused its discretion in denying his second motion and the district court abused its discretion in affirming the denial, he fails to cite to the abuse of discretion standard, articulate which of the four

9

prongs is at issue, and explain how either court abused its discretion vis-à-vis that prong. As a result, Christopher has waived this argument on appeal. *Id.* Finally, Christopher argues that under "*Pizzuto*'s flexible standard, [the motion] was timely. Idaho law recognizes that new controlling legal authority can justify renewed motions." Christopher provides no specific citation for this statement and as noted above, that is not what *Pizzuto* held; consequently, Christopher has waived this argument on appeal. *Powell*, 130 Idaho at 128, 937 P.2d at 440.

Because Christopher has waived any challenge to the characterization of his second motion, we cannot conclude that the magistrate court erred in denying his motion or that the district court, sitting as an intermediate appellate court, erred in treating the motion as a prohibited motion to reconsider that was improperly before the magistrate court based on I.R.F.L.P. 503(b)(2). Thus, the district court did not err in concluding that the magistrate court did not abuse its discretion when it denied Christopher's second motion for relief.

## D.     The Community Property Equalization Payment

However, even if reviewed on the merits, Christopher's argument fails. Christopher requests this Court find that his payment obligation under the stipulation was contingent on the viability of Burst Biologics and to "vacate the equalization payment obligation." Christopher asserts the equalization payment was "explicitly premised" on his "ability to generate income from Burst Biologics" and the business was "destroyed by post-judgment federal agency actions" that departed from expected procedures. Thus, Christoper argues that because the stipulated judgment did not allocate "risk for regulatory shutdown" of his business, the enforcement of the judgment is no longer equitable. In the alternative, Christopher requests this Court to recalculate or restructure the payment obligation as "equity requires" to reflect the "post-judgment destruction of the business that was the intended source of payment" and the "mathematical impossibility of the current payment structure." Christopher relies on *Rudd v. Rudd*, 105 Idaho 112, 114, 666 P.2d 639, 641 (1983) to support his argument. However, the facts of this case are not like the facts in *Rudd*. There, the judgment and divorce decree ordered the sale of the parties' real property and the division of the sale proceeds, but the parties had difficulty selling the property. *Id.* at 118, 666 P.2d at 645. The parties then executed a new stipulation that varied from the decree. *Id.* They again experienced difficulty selling the property and moved the magistrate court to order the division of the property. *Id.* The magistrate court found, pursuant to I.R.C.P. 60(b)(5), that the judgment was no longer equitable as written and that it operated prospectively because it explicitly

10

contemplated a sale of the parties' property at some time in the future. *Id.* at 118-19, 666 P.2d at 645-46. The judgment here, as it relates to the equalization payment, did not operate prospectively.

At the motion hearing in this case, the magistrate court referenced both *Sword v. Sweet*, 140 Idaho 242, 92 P.3d 492 (2004) and *Ross*, and explained that parties are bound by their stipulation through counsel and a fluctuation in the value of a marital asset does not qualify as a reason to modify the property division in a final, unchallenged judgment and divorce decree. In *Sword*, a husband and wife were granted a divorce; as part of the property settlement, they agreed to divide an investment account based on its value as of June 5, 2000. *Id.* at 252-53, 92 P.3d at 502-3. The wife was awarded $112,404, which she was paid. *Id.* at 253, 92 P.3d at 503. The husband retained the account with his share of $237,645. *Id.* Thereafter, the value of the account declined, and the husband's share was reduced to $83,624. *Id.* The husband filed a motion to clarify the division of the account and argued that it was unfair to award the wife her full amount while leaving him to absorb the losses in the market decline. *Id.* The magistrate court concluded that the parties were bound by their stipulation to use the value of the account as of June 5, 2000. *Id.* On appeal, the Idaho Supreme Court agreed, noting that had the market economy increased, the husband would have accrued the benefit. *Id.* The Court concluded, "Had there been no division of property, [the husband's] assets still would have been diminished due to stock market fluctuations and investment decisions. The trial court applied the correct cut-off date for property valuation." *Id.*

In *Ross*, the former wife sought to modify the judgment and divorce decree to obtain an interest in the former husband's military pension. *Ross*, 117 Idaho at 549, 789 P.2d at 1140. In 1982, at the time the judgment was entered, state courts were prohibited from dividing military retirement benefits according to state community property laws in divorce actions. *Id.* Thereafter, federal law permitted states to consider military pensions as either separate property or as community property, in accordance with state law. *Id.* at 550, 789 P.2d at 1141. The wife then moved to amend the judgment to obtain an interest in the husband's military pension. *Id.* The magistrate court denied the motion and found that the monthly alimony payment ordered in the judgment was in lieu of the wife's share of the monthly military retirement benefit, thus, the wife had received at least one-half of the community property. *Id.* The magistrate court concluded that the wife failed to show the judgment was no longer equitable. *Id.* On intermediate appeal, the district court affirmed the magistrate court's decision. *Id.* Thereafter, the Idaho State Legislature

11

enacted a statute which provided that community property settlements, judgments, or divorce decrees that became final after June 25, 1981, and before February 1, 1983, could be modified to include a division of military retirement benefits. *Id.* at 550-51, 789 P.2d at 1141-42. The wife again moved to modify the judgment--this time pursuant to the newly-enacted statute. *Id.* at 551, 789 P.2d at 1142. The magistrate court concluded the issue was res judicata and the district court, sitting in its intermediate appellate capacity, reversed the magistrate court and held the new statute provided an independent basis for the modification. *Id.* The husband appealed. *Id.*

The Idaho Supreme Court addressed the preclusive effect of the magistrate court's decision regarding the first motion to modify and reviewed what the magistrate court decided. *Ross*, at 550-51, 789 P.2d at 1141-42. The Court noted that the magistrate court considered the property division and the provision for alimony in the settlement agreement; calculated the amounts owed by the parties to each other as of the date the settlement agreement was executed; concluded the alimony payment constituted a substantially equal division of the monthly retirement benefit and in any event, the wife had received at least half the community estate; and concluded the wife had failed to show the judgment was no longer equitable. *Id.* at 553, 789 P.2d at 1144. The wife argued that the monthly alimony payment did not constitute an equal division of the retirement benefits. *Id.* at 554, 789 P.2d at 1145. The Court rejected her argument and explained, "Any community asset may change in value after the division of the community. This is not a reason to modify the division." *Id.* Here, both *Sword* and *Ross* support the magistrate court's conclusion that the relevant date to assign value to the parties' community property is the date of entry of the judgment and that upon that date, the judgment, and therefore the equalization payment amount, became final.

Procedurally, the order denying Christopher's first motion for relief--from which Christopher did not appeal--became final and had a preclusive effect on Christopher's second motion for relief. In other words, after the denial of the first motion, the amount of the community property equalization payments and whether those payments were equitable was res judicata on subsequent I.R.F.L.P. 805 motions.

At the hearing on Christopher's second motion for relief, the magistrate court noted it made extensive findings in its written order denying Christopher's first motion. The magistrate court repeatedly addressed that order at the hearing and made clear it was denying Christopher's second motion for the same reasons articulated in its first order. Because the order denying the first motion

12

is not in the record, we cannot review the magistrate court's decision to deny Christopher's second motion based on the reasons it articulated in the first order. As previously stated, it is the responsibility of the appellant to provide a sufficient record to substantiate their claims on appeal. *Powell*, 130 Idaho at 127, 937 P.2d at 439. In the absence of an adequate record on appeal to support the appellant's claims, we will not presume error. *Id.* Consequently, the district court's decision, acting in its appellate capacity, affirming the magistrate court's denial of Christopher's second motion for relief is affirmed.

Moreover, even if the first denial did not act as res judicata on Christopher's second motion, the magistrate court, and subsequently the district court, did not err in concluding the post-judgment devaluation of Burst Biologics did not relieve Christopher from paying Jessica the stipulated community property equalization payment. The judgment contained no language that the equalization payment was prospective or dependent upon the continued success of Burst Biologics. There was nothing prospective about Christopher's obligation to pay the equalization payment; the plain language of the judgment makes clear the amount was due at the time the judgment was entered. That the judgment allowed Christopher to make payments on the balance does not change the fact that Christopher agreed to pay Jessica $1,150,000 and owed her that amount upon entry of the judgment. As evidence that Christopher owed Jessica the entire amount, the stipulated judgment required Christopher to execute a promissory note as security for the obligation, in the amount of the remaining balance, and to deliver the note to Jessica "commensurate with the entry of the judgment." The stipulated judgment also stated, "As further security, and until [the balance] is paid off in full, Christopher shall maintain a life insurance policy equal to or in excess of the amount owed to Jessica, and such amount would be payable to Jessica in the event Christopher dies before it is paid off." Finally, the stipulated judgment stated, "Christopher may pre-pay the remaining balance at any time without penalty."

The magistrate court explained to Christopher that his responsibility for the community property equalization payment agreed upon in October 2021 did not change simply because the value of his company declined. The magistrate court reasoned that under Idaho law, a fluctuation in the value of a marital asset does not qualify as a basis to modify the division, and the parties are bound by their stipulation. The magistrate court explained to Christopher that Burst Biologics going bankrupt was no different than stocks devaluing post-judgment as in *Sword*:

13

And the distinction that I would make is this is no different than stocks, right? So you've got a company that has--you know, you've got a million dollars in--in value of a stock and a natural disaster comes and the stock goes down, right?

So your argument is that it's unforeseeable that this natural disaster can impact this company and goes down, right? But stocks go up and down all of the time for reasons that are foreseeable and not foreseeable. And the Idaho Supreme Court has clearly stated that that's not grounds to unwind the judgment.

. . . .

If the Idaho Supreme Court says that unforeseeable natural disasters that negatively impact the stock prices are not grounds for unwinding a transaction because values of businesses rise and fall naturally, how is that any different than you saying the FDA's actions are unforeseeable, which somehow negatively impacted this business?

The magistrate court further explained that the link between Burst Biologics' viability and Christopher's ability to pay were not related because Christopher could, in the future, secure sufficient income to make the community property equalization payment. The magistrate court then explained to Christopher why his claim failed under each subsection of I.R.F.L.P. 805. First, the magistrate court explained that subsection (a) is for corrections based on clerical mistakes, oversights, and omissions, none of which applied in Christopher's case.

Second, subsection (b)(1) was not applicable because there was no mistake, inadvertence, surprise, or excusable neglect. The magistrate court disagreed with Christopher that the FDA's actions were unpredictable or caused Christopher to close his business and declare bankruptcy. The magistrate court explained there was no evidence presented that the FDA's actions were unreasonable such that they would have been a surprise, in part because Christopher knew about the FDA's actions and also in part because despite knowing about the FDA's actions and characterizing them as unreasonable, Christopher did not challenge the administrative actions; instead, he closed Burst Biologics and declared bankruptcy. The magistrate court explicitly referenced its order denying Christopher's first motion, which addressed the foreseeability issue, and inquired as to why Christopher was rearguing "the same thing."

The magistrate court reiterated that Christopher received his first FDA letter suggesting a potential problem with Burst Biologics in March 2021, approximately six months before Christopher stipulated to pay Jessica the community property equalization payment. Christopher argued that at the time he entered into the stipulation, he could not reasonably foresee the negative impact on his business because he reasonably believed the FDA would follow fair procedures and

14

that he would have an opportunity to challenge the FDA's actions. The magistrate court rejected this argument.

The magistrate court explained that the subsequent devaluation of the business was not unlike the stock devaluation in *Sword*. It also noted there was no evidence that the FDA did not follow appropriate procedures because Christopher did not pursue any federal action against the FDA. The magistrate court further noted that even if relevant, the FDA made adverse decisions all the time and Christopher was aware of the potential for an adverse decision. Knowing this, Christopher still willingly entered the stipulation and agreed to the amount and structure of the community property equalization payment without requesting that the magistrate court retain jurisdiction over any element of the equalization payment or require the payment amount be contingent upon the profitability of Burst Biologics.

Third, the magistrate court explained subsection (b)(2) relates to newly discovered evidence that occurred before entry of the judgment and found Christopher was incorrect in his assertion that *Loper Bright* is newly discovered evidence. *Loper Bright* was a change in the law, not in the facts, and any argument relating to it was relevant only in a federal lawsuit, not in state family law court. The magistrate court next determined subsection (b)(3) did not qualify Christopher for relief because there was no fraud, misrepresentation, or misconduct by Jessica prior to entry of the judgment. The magistrate court held subsection (b)(4) was inapplicable because that subsection allows relief if a judgment is void and the judgment here is valid as it was based upon a stipulation freely entered by Christopher.

Next, the magistrate court explained subsection (b)(5) allows for relief if "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." Twice during the explanation of why this subsection does not apply, the magistrate court referenced its earlier decision. The magistrate court reiterated: "I've already discussed this with you. I--we discussed it prior and I put it in my decision." Later, the magistrate court stated, "I don't think I need to say anymore. I highlighted my thoughts when I wrote the brief. I don't have anything to add. Your argument doesn't bring anything new."

Christopher has not shown that I.R.F.L.P. 805 provides relief on the bases he argues. The magistrate court did not err in concluding Christopher's second motion for relief was untimely or

in denying the motion on the merits. The district court similarly did not err in affirming the magistrate court's decision.

**D.  Attorney Fees and Costs on Appeal**

Jessica requests attorney fees and costs on appeal pursuant to Idaho Code § 12-121. An award of attorney fees may be granted under I.C. § 12-121 and Idaho Appellate Rule 41 to the prevailing party and such an award is appropriate when the court finds that the appeal has been brought or defended frivolously, unreasonably, or without foundation. An award of attorney fees is appropriate if the appellant only invites this Court to second-guess the trial court on conflicting evidence, or if the law is well settled and the appellant has made no substantial showing that the lower court misapplied the law, or no cogent challenge is presented with regard to the trial court's exercise of discretion. *Pass v. Kenny*, 118 Idaho 445, 449-50, 797 P.2d 153, 157-58 (Ct. App. 1990). We decline to award attorney fees in this case as that standard has not been met. As the prevailing party, Jessica is entitled to costs on appeal pursuant to I.A.R. 40.

**IV.**

**CONCLUSION**

Christopher has failed to show the district court erred in affirming the magistrate court's findings of fact and conclusions of law. Accordingly, the district court's decision, on intermediate appeal, affirming the magistrate court's order denying Christopher's second motion for relief is affirmed. Costs on appeal are awarded to Jessica as the prevailing party.

Chief Judge TRIBE and Judge Pro Tem MELANSON, **CONCUR**.